54 So.2d 18

**OLIPHINT v. OLIPHINT.**
No. 39209.

May 28, 1951. .

Hugh M. Wilkinson, A. Miles Coe and Harry Nowalsky, all of New Orleans, for plaintiff-appellant.

Rosen, Kammer, Wolff, Hopkins & Burke, New Orleans, for defendant-appellee.

McCALEB, Justice.

On May 2nd 1944, plaintiff filed suit against defendant in St. Charles Parish for a separation from bed and board and obtained an injunction restraining him from selling, encumbering or disposing of the community property. On June 8th 1944, she was granted a separation as prayed for and more than a year later, on July 25th 1945, a judgment of final divorce was rendered on her application.

In the course of the proceedings, plaintiff was awarded alimony pendente lite and permanent alimony was granted to her in the judgment of divorce. Inventories were also taken for and on behalf of plaintiff, under orders of court, of various property allegedly belonging to the community. These inventories revealed assets in Jefferson Parish appraised at $20,425.25; in St. Charles Parish $56,310.89; in Orleans Parish $55,564.75 and in Caddo Parish $267,250. Defendant was not present when these inventories were made and he has at all times protested their accuracy, both as to the property included and the value thereof, it being his contention that the community assets, for the most part, consist of stock in various corporations in which he is either interested or manages and controls, whereas plaintiff, in the inventories made on her behalf, ignores the corporate entities and appraises the assets of these companies as belonging to the community.

With matters in this state, plaintiff, in an endeavor to bring about a winding up and settlement of the community affairs, brought the present action in these proceedings wherein she sought, by rule, a disclosure by defendant of all of the community assets and an accounting therefor. Specifically, plaintiff charged that defendant has in his possession or under his control community assets which he has concealed; that some of this property is held in the name of corporations of which defendant has exclusive control; that he should be required to account for all such property, together with any other property transferred by him to others in an effort to defraud the community before and after its dissolution and the issuance of the injunction, and that, finally, he show cause why the effects listed in the inventories taken in these proceedings should not be adjudged to belong to the conjugal partnership.

In accordance with the prayer of the petition, a rule to show cause issued, coupled with a writ of subpoena duces tecum, or-

dering the defendant to produce various books, records, ledger accounts, cancelled checks, documents, etc. pertaining to all phases of his personal business and also the books of several corporations allegedly under his dominion and control.

On the day appointed for the hearing, the defendant appeared and filed his return to the rule. In a lengthy answer, he denied plaintiff's charges of fraud and other imputations of ill practices, setting forth that he had at all times during the proceedings endeavored to cooperate with plaintiff in her ascertainment of the community estate; that he had furnished her counsel with full statements of all property standing in his name or in which he had any interest and that he was presently able and willing to furnish a complete accounting. And, attaching to his answer a purported full statement of the community assets and liabilities as of June 8th 1944 (the time of its dissolution by judgment of separation from bed and board) as of July 31st 1947 (approximately a month or two before the rule for an accounting was tried), he prayed that his return be deemed good and sufficient; that it be adjudged that the community property consisted of those assets set forth in the schedule attached to his return and that he be hence dismissed with costs.

1. The hearing was on September 8th, 1947 and the judgment was rendered and signed on May 24th 1948.

2. This was proper. It has been held that the question of the legal right of a

After a hearing on the foregoing issues, at which considerable evidence was adduced, the court some months later [1] entered judgment dismissing the rule at plaintiff's cost. Plaintiff has appealed.

During the argument of this matter on the date of its submission, one of the Justices raised the question as to whether the judgment is appealable,[2] it being suggested that it was perhaps an interlocutory decree which did not work irreparable injury since the respective rights of the parties would be reviewable on an appeal from a judgment ordering a partition of the community which must ultimately be obtained. Conformable to this suggestion, the parties have furnished separate briefs covering the appealability of the judgment, defendant maintaining that the appeal should be dismissed.

After a careful examination of the pertinent authorities, it is our opinion that the judgment herein rejecting plaintiff's rule for an ascertainment of the community assets and for a complete accounting of all property, including assets allegedly concealed by defendant, is a final judgment which has, for all intents and purposes, disposed of the main controversy between the parties. After the judgment of divorce

party to an appeal need not be raised by appellee on a motion to dismiss and that the court may take notice of the matter ex proprio motu. Reeves v. Barbe, 200 La. 1073, 9 So.2d 426 and Cotton v. Wright, 214 La. 169, 36 So.2d 713.

was granted, the only issue remaining was a partition of the community effects which have been and still are in defendant's possession. Plaintiff's one-half ownership in these effects is fixed by law and, hence, the partition would be a mere formality if the parties were in agreement as to the items of property forming the community. But a serious contest has arisen respecting various property allegedly in defendant's possession or under his control which is claimed by plaintiff as community. The judge, in rejecting her demand, has approved, inferentially at least, the accounting furnished by defendant; he has accordingly fixed the status of the property contained in defendant's schedule as being the true community and has also, by inference, approved the community liabilities as shown by defendant in his account.

It is, of course, true that the judgment is not a final judgment in the sense that it is the last judgment to be rendered in the case. Therefore, it cannot be said to fit exactly within the definition of definitive judgments contained in Article 539 of the Code of Practice. On the other hand, it is apparent that it cannot be regarded as an interlocutory judgment, as defined by Article 538 of the Code of Practice, since it trenches upon the merits of the case and does not merely pronounce on preliminary matters in the course of the proceedings. Albeit, the judgment falls within that zone of decrees which are not defined in the Code of Practice but which really partake of final judgments in that they dispose of issues applicable solely to the merits of the case. The omission of provisions in the Code of Practice relative to this type of judgment has been heretofore commented upon by this court in a number of cases and appeals from such judgments have been sanctioned. See Cary v. Richardson, 35 La.Ann. 505 and Garland v. Dimitry, 164 La. 875, 114 So. 718.

In maintaining that the judgment is interlocutory, counsel for defendant cite, among others, the case of Benham, Ziegler & Co. v. Mouledoux, 175 La. 711, 144 So. 428,[3] where it was held that a judgment ordering an accounting is an interlocutory decree which is not appealable as it does not work irreparable injury. But that decision, and others of the same order, are not authority for the proposition that the judgment appealed from in the case at bar is interlocutory—for, here, the plaintiff is not appealing from the court's issuance of the rule for defendant to account. On the contrary, the defendant says that he has accounted and the trial court has entered judgment approving, in effect, the account which he has rendered. Such a judgment

3. It is to be noted that, in this decision and also in Feitel v. Feitel, 169 La. 384, 125 So. 280, the court commented upon and distinguished the ruling in Cary v. Richardson, 35 La.Ann. 505 and Garland v. Dimitry, 164 La. 875, 114 So. 718, which we think govern the appealability of the judgment in the case at bar.

is patently final for, as above stated, it disposes of the real controversy in the case and renders the partition and settlement of the community estate a mere formality.

The merits of the case involve primarily the status of certain property standing in the name of corporations over which defendant has complete control by virtue of stock ownership or the device of voting trusts which he has admittedly employed to advantage. There is also the question of whether the community debts, as shown by defendant in his accounting, are correct. However, as the judge of the district court, by merely dismissing plaintiff's rule, did not formally approve the account rendered by defendant, as prayed for by him, a remand of this portion of the case will be required as we cannot say, from the record before us, that all of the debts listed by defendant as community liabilities are proper.

The pertinent facts of the case are as follows: Plaintiff and defendant were married in 1925. She was his second wife, he being a widower with three children at the time of the marriage. Defendant was a protege of the Saenger brothers, Julian and A. D. Saenger of Shreveport, who were prominent in the theatre and drug business in this State for many years. He has been connected with these businesses, particularly with theatrical enterprises, for a long time and presently is Assistant Secretary of Paramount-Richards Theatres, Inc. and United Theatres, Inc. In addition thereto, he is employed by Mr. E. V. Richards of New Orleans to handle his finances and personal affairs.

It is admitted by the defendant that he owned no separate property at the time of the suit herein and that all of the assets standing in his name belong to the community which existed between plaintiff and himself. The community assets consist, in great measure, of stocks in corporations which are either owned or wholly controlled by defendant. The other assets, over which there is no contest, are minority stock holdings in Paramount-Richards Theatres, Inc., Progressive Industrial Bank, certain real estate located in Jefferson Parish, royalty interests, automobiles, furniture and miscellaneous movables.

The gravamen of plaintiff's charges is that defendant conducts his personal business and operations through two corporations, viz., "My Own Farms, Inc." and "Saenger Investment Corporation"; that these companies are used to conceal his true worth and that, by the employment of voting trusts and corporate book manipulations, he has effectively deprived her of vested community rights in violation of law and of the injunction restraining him from disposing of the community assets. By far, the most serious of plaintiff's charges has reference to the Saenger Investment Corporation, which we will initially consider.

In 1937, defendant purchased at a sale conducted by the United States, under a warrant for distraint, certain property belonging to A. D. Saenger for $3750. Much

of this property consisted of shares of worthless stock and promissory notes but, included in the purchase was the stock of Saenger, Inc. and Saranac Investment Company which was of considerable potential value as the former owned the Saenger Theatre in Shreveport and the latter operated a chain of drug stores. Upon the acquisition of the assets of Saenger, Inc. and Saranac Investment Company, defendant merged the companies and formed Saenger Investment Corporation. Simultaneously, he donated to Mrs. Bertha Saenger, the wife of A. D. Saenger, one-half of the stock of Saenger Investment Corporation. Plaintiff vigorously attacks this transfer as being violative of Article 2404 of the Civil Code.

■ This complaint is not tenable as the evidence warrants the conclusion that the donation was made in good faith (probably with plaintiff's knowledge and consent and not with a design to injure plaintiff's rights in and to the community). Defendant explains that Mr. A. D. Saenger had practically raised him and that he felt that, by turning over one-half of the stock in Saenger Investment Corporation to Mrs. Saenger (he could not place it in Mr. Saenger's name as the stock would have been subject to a tax lien of the Federal Government) he was only repaying, in a measure, some of the Saengers' benefactions to him. He further states that the gift was made with plaintiff's knowledge and consent. Plaintiff weakly denies that

she knew of this transaction but her testimony on this point is not impressive. In any event, it is certain that the donation, made at a time unsuspicious, was not for the purpose of defrauding plaintiff of her community rights.

But her counsel nevertheless persist that the donation was void under Article 2404 of the Code, which provides:

"The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.

"He can make no conveyance inter vivos, by a gratuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. A gratuitous title within the contemplation of this article embraces all titles wherein there is no direct, material advantage to the donor.

"Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons.

"But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud".

It is asserted that the foregoing Article reprobates the donation of valuable movables, such as the shares of stock to Mrs. Saenger in this case and our recent decision in Succession of Geagan, 212 La. 574, 33 So.2d 118, is cited as authority for the contention.

We think that counsel are mistaken in their conception of the codal article and the ruling in the Geagan case. The article specifically permits the husband, during the marriage, to convey movable effects by a gratuitous title. It is only the immovables or the whole or a quota of the movables that he is prohibited from giving. It was this right of the husband to make gratuitous dispositions of valuable movable property that we opined, in Succession of Geagan, supra, was incompatible with common justice in these times when movable property often constitutes the great bulk of the community wealth and we suggested that the Legislature should investigate the matter with a view of correcting this condition. But nothing has been done by the Legislature and the law remains as above quoted.

■ We have also given thought to the question as to whether the donation to Mrs. Saenger constituted a gift of a quota of the movables, which is prohibited by the codal article, but have concluded that it does not. "Quota" means (see Webster's New International Dictionary, 2nd Ed.) "A proportional part or share". As used in the Code, we think it is synonomous with "fraction" or "percentage" such as ⅒ of the whole of the movables and not a specific movable or movables, i. e., certain shares of stock.

Soon after the acquisition of Saenger Investment Corporation, defendant undertook to make voting trust agreements and had a Mr. A. D. Saenger and himself appointed voting trustees. Mr. Saenger was placed on the payroll at $150 per month but the control and management of the corporation was retained by defendant.

Plaintiff contends that, between September 1940 and June 1946, defendant, with intent to defraud the community, permitted Mr. Saenger to draw from Saenger Investment Corporation over $22,000 for his living expenses which was written off the books as "bad debts". While it was proven that over $22,000 charged against Mrs. Saenger's account was deducted as bad debts on the income tax returns of Saenger Investment Corporation, plaintiff failed to sustain her contention that these debts were incurred for the Saenger's living expenses. The only testimony on this subject was given by defendant. He states that he and Mr. Saenger were endorsers on the notes of Saenger Investment Corporation for over $44,000; that the Hibernia National Bank, representing the creditors, was pressing for payment and that an arrangement was made whereby Saenger-Ehrlich Enterprises, Inc., lessee of the theatre owned by Saenger Investment Corporation, would pay $600 of the $1000 monthly rent

due Saenger Investment to Hibernia National Bank in discharge of the obligation; that the indebtedness was gradually settled in this manner; that, as it was being thus liquidated, the personal accounts of defendant and Saenger with Saenger Investment Corporation were each debited with $300 per month and that the amounts so debited against Saenger were charged off as bad debts of the corporation.

It is difficult to see how these book entries and manipulations injured the community estate. Indeed, it is not easy to understand why Saenger (or defendant, for that matter) was a debtor of the Saenger Investment Corporation merely because he was an endorser on the note for the corporation's obligation. And it is to be wondered why his account should be debited when the corporation paid its own obligation. But, after all, the corporation saved the taxes by the deduction of the so-called bad debt and this inured to the benefit of the community, although the debit charge against defendant was detrimental.

The suit for a separation was filed on May 2nd 1944. On the day before, defendant, obviously with knowledge of the impending action, (1) withdrew $5000 from his personal account in the Hibernia Bank and deposited the money in the account of Saenger Investment Corporation, (2) entered into a new voting trust agreement in which he and one of his daughters were named as voting trustees of Saenger Investment Corporation and (3) entered into to a similar voting trust agreement for the stock of "My Own Farms, Inc." placing himself and another daughter in absolute control of that corporation. On the witness stand, defendant explains that the $5000 was transferred to Saenger Investment Corporation to pay a mortgage note of $4500 falling due about that time and, when asked why he had to pay this out of community funds, he declares that the community was indebted to Saenger Investment Corporation for a large sum, the amount not being mentioned. Insofar as the voting trust arrangements are concerned, he frankly admits that this was a deliberate move to prevent plaintiff from having a voice in the management of either "My Own Farms, Inc." or "Saenger Investment Corporation" maintaining that, as long as he was master of the community, he could do as he pleased.

The only thing that defendant neglected to consider when he initiated these acts was that, while he had the right to administer the community as he wished during the marriage, the law forbade him to do anything detrimental to his wife's interest at a time when he was aware of the impending divorce suit. And, as these acts were deliberate and performed with intent to diminish plaintiffs' community interest, they are to be regarded as in fraud of her rights.

Subsequent to the separation suit, defendant created another voting trust in

which he constituted his attorney as the voting trustee for his three daughters by his first marriage. Thereafter, he had the attorney arrange, as trustee and for the account of his daughters, the purchase of Mrs. Saenger's stock in Saenger Investment Corporation, the purchase price being $200 per month for a period of 20 years. Payments on this purchase price were and are now being taken out of the assets of the Saenger Investment Corporation, the account of defendant's attorney, as trustee, being debited each month in the sum of $200. At the time of the trial, $5200 had already been diverted for this purpose.

All this, according to defendant, is perfectly proper and legal. However, when he was requested by counsel for plaintiff to turn over the books of Saenger Investment Corporation for inspection, he tore from the books the pages which contained the entries referring to the purchase of Mrs. Saenger's stock by his attorney, as trustee for his children. He says that he was well within his rights in doing this because the community had already been dissolved and that any transactions he had made for the benefit of his daughters were of no concern to plaintiff. And, stating that he had nothing to conceal, he shows that his attorney wrote counsel for plaintiff that the purchase of Mrs. Saenger's stock was being effected; that it was an "arms-length" transaction which could be employed as a basis for establishing the value of the community interest in the Saenger Investment stock.

But the one fact that was hidden from plaintiff's counsel, until the torn pages of the corporation's books were later delivered to them, was that the corporation's funds were being used in payment of the purchase price. The concealment of this information does not lend credence to defendant's protestations of good faith. In our view, the use of the corporation's money to pay the price of the stock acquired for his daughters was a violation by defendant of the court order prohibiting him from disposing of the community property for the reason that, actually, the community owned one-half of those funds. In circumstances such as this, the court will look behind the corporate veil into the reality of the transaction. Succession of Geagan, supra and Wainer v. Wainer, 210 La. 324, 26 So.2d 829. Defendant had full control of the corporation and it will not do for him to say that, by using the corporate funds (half of which belonged to the community) to pay for the purchase made by his attorney on behalf of his daughters, he was well within his rights because the interest of the community was that of a stockholder of the corporation and not as owner of the corporate assets.

"My Own Farms, Inc." was organized in 1936 for the purpose, according to defendant, of owning horses and shipping them to horse shows. He explains that plaintiff was a horse fancier and that the corporation was actually formed for protection against individual liability for damages resulting from the shipment of horses. Ten shares of

stock were issued, eight to defendant, one to plaintiff (which she endorsed in blank and returned to him) and the other to one of his daughters as a donation. After its incorporation, My Own Farms, Inc. acquired a farm in St. Charles Parish and various livestock and equipment. This farm has been operated by defendant; he also occupies it as a residence and, strangely enough, leases it from the corporation, paying, he says, a substantial rental. The amount of this rent and how it is paid, by cash or mere book entry, is not brought out by the evidence.

Plaintiff claims that the donation of the one share of stock of My Own Farms, Inc., by defendant to his daughter is violative of Article 2404 of the Civil Code. We do not think so. This donation is in the same category as the gift to Mrs. Saenger of one-half of the stock of Saenger Investment Corporation—that is, it is not a gift of a quota of the movables and, therefore, not in defiance of Article 2404. Furthermore, since the donation was made at a time when the parties were apparently on good terms and with the knowledge and consent of plaintiff, it cannot be said to have been made by defendant for the purpose of defrauding plaintiff of her community rights.

In the rule to show cause, plaintiff prayed, among other things, that the properties listed on the inventories taken in her behalf be adjudged community property. These inventories have ignored the corporate entities, My Own Farms, Inc. and

Saenger Investment Corporation and list the real and personal property standing in the name of those companies as community property. We believe that this was improper because the corporations have title to these assets and they are legal entities which are not dissoluble, save in the manner provided by law. While this court may disregard the corporate fiction for purposes of requiring defendant to account to the community, it cannot divest the corporate titles or the rights of shareholders, when the corporations and shareholders, other than defendant, are not parties litigant in this proceeding.

Inasmuch as we have found that the two corporations are legally formed, the community interest is represented by the stock in the companies, 90% in My Own Farms, Inc. and 50% in Saenger Investment Corporation. On the other hand, we deduce that by reason of his acts, immediately prior to and since the institution of the separation proceedings and the issuance of the injunction, defendant has intentionally disturbed, damaged and diminished the community estate to plaintiff's detriment and that he has become liable therefor. Specifically, we find that he is indebted to the community for the $5000 withdrawn by him from his personal bank account on the day before the institution of the separation suit and also for one-half of the sums withdrawn from Saenger Investment Corporation by his attorney, as trustee for his daughters, which have been paid on ac-

count of the purchase of the stock of Mrs. Bertha Saenger. In addition, we are remanding this case for the purpose of a further investigation and careful scrutiny of the debts of the community (submitted by defendant in the schedule attached to his answer) and also the credits and liabilities of defendant, and others closely connected with him, appearing on the books of Saenger Investment Corporation and My Own Farms, Inc. If any of these credits or liabilities are shown to be spurious or to be the result of loans made by the corporations for the purpose of diminishing the value of the community interest in the stock of the two corporations, the defendant is to be held accountable and the trial judge is instructed to find him personally liable to the community therefor. After a full and complete ascertainment of all assets and liabilities, the community estate is to be partitioned and settled in accordance with law.

The judgment appealed from is therefore reversed and the case remanded to the trial court for further proceedings consistent with the views herein expressed.

HAMITER, J., dissents and assigns written reasons.

HAMITER, Justice (dissenting).

It is my opinion that the judgment about which plaintiff complains is of the unappealable kind and, hence, we are without right to entertain this appeal.

After plaintiff obtained the divorce decree, which also enjoined defendant from

selling or encumbering community assets until a complete partition be effected, she caused to be issued a rule ordering the defendant to show cause why he should not render an accounting of all assets of the community allegedly concealed by him and, further, why the properties listed on the inventories taken on her behalf should not be adjudged as belonging to the community.

Answering the rule, defendant denied that he had concealed any community property. Additionally, he specifically challenged the correctness of the inventories taken on plaintiff's behalf and affirmatively averred "* * *. that there is attached hereto, marked 'Schedule 1', an exhibit showing all of the community property which existed at the date of the dissolution of the community and the status of said property as of within a few days of the filing of this answer; that said Schedule 1 is true and correct in all respects." Then defendant prayed "* * * that this answer and return may be deemed good and sufficient, and that the court, after considering all of the law and the evidence, expressly hold that defendant has not in any wise concealed or attempted to conceal any of the community property; that the community property consists of those properties set forth in Schedule 1 attached hereto; and that plaintiff's petition be dismissed and the rule discharged."

As scheduled, a hearing on plaintiff's rule to show cause was had; and thereafter the

court rendered and signed the following judgment:

"The rule to show cause filed herein and made returnable on September 8th, 1947, was taken up, tried, and submitted, and after considering the evidence adduced on the trial of said rule, the court has arrived at the conclusion that the relator has failed to establish by competent evidence any material found, and for reasons this day orally assigned;

"It is ordered, adjudged and decreed, that the said rule be and the same is hereby recalled, amended [annulled] and set aside, together with costs.

"Judgment rendered, read, and signed in open court on this 24th day of May, 1948." (Brackets ours.)

It is from this judgment that plaintiff is now appealing.

According to the Louisiana Code of Practice:

"One may appeal from all final judgments rendered in causes in which an appeal is given by law, whether such judgments have been rendered after hearing the parties, or by default." Article 565.

"One may likewise appeal from all interlocutory judgments, when such judgment may cause him an irreparable injury." Article 566.

"Interlocutory judgments do not decide on the merits; they are pronounced on preliminary matters, in the course of the proceedings." Article 538.

"Definitive or final judgments are such as decide all the points in controversy, between the parties.

"Definitive judgments are such as have the force of res judicata." Article 539.

In our jurisprudence interpreting these articles there appeared a conflict among the earlier decisions. Thus, in 1883 it was held that a ruling which disposed definitely of any one phase of a controversy was final as to that phase and, therefore, appealable. State ex rel. Ikerd v. Judge of Eighth Dist. Court, 35 La.Ann. 212. Later, during the same year, in another case, a contrary view seems to have been taken, the court holding in effect that a suit should not be heard on appeal by fragments unless the interlocutory decree appealed from would cause irreparable injury. State ex rel. Pflug v. Judge of Civil Dist. Court, 35 La. Ann. 765.

Recognizing this conflict the court in Bossier's Heirs v. Hollingsworth & Jackson, 117 La. 221, 222, 41 So. 553, 555, resolved it by adopting the view taken in the Pflug case. Then it observed:

"We therefore usually understand by the term 'final judgment' that judgment which, disposing of all the issues not previously disposed of by interlocutory judgments, is the last judgment which the court renders. If this be not so, there may be, in any given case, as many appeals as there are issues presented, and as the law authorizes the cumulation of separate actions in the same demand (Code Prac. art. 148), a

single suit may be infinitely divided, with divisions and subdivisions pending, at the same time, in different courts. The judgment now under consideration does not dispose of all the points in controversy between the parties, nor does it cause the parties against whom it was rendered irreparable injury, and, in neither of these respects, is its character affected by the fact that it bears the judge's signature.

"It can be reviewed, on the appeal from the judgment which may ultimately be rendered in the case (provided the plaintiffs take such appeal or answer it, as the case may be); but we do not think that it would conduce to an orderly administration of justice to review it at this time, * * *."

The doctrine of the Bossier's Heirs case was adhered to in Trcka v. Bragmans Bluff Lumber Company, 168 La. 805, 123 So. 332, and Feitel v. Feitel, 169 La. 384, 125 So. 280, 281, in the latter of which the court, with respect to the earlier jurisprudence, stated: " * * * The case of State ex rel. Ikerd v. Judge [of Eighth Dist. Court], 35 La.Ann. 212, was, in effect, overruled in Bossier's Heirs v. Hollingsworth & Jackson, supra, * * *."

It is true that in Williams et al. v. De Soto Bank & Trust Company et al., 185 La. 888, 171 So. 66, an appeal was entertained principally on the strength of the Ikerd case, and without mentioning the Bossier's Heirs, Trcka and Feitel cases. In citing the Ikerd case as authority, however, the court seemingly interpreted it as holding that to disallow the appeal would work an irreparable injury.

During the same year in which the Williams decision was rendered the court in Mann v. Edenborn, 185 La. 154, 168 So. 759, 760, refused to pass upon an appeal from what was termed an interlocutory judgment, it not being decisive of all points in controversy. Therein the court quoted Code of Practice Articles 538 and 539, which define interlocutory and definitive judgments, and then commented:

"The judgment appealed from is not a final judgment, because it leaves undecided the main demand. Not being decisive of all points in controversy, it would not support a plea of res judicata. This is so because it is a judgment on a preliminary matter in the course of the proceeding. The fact that the judgment was signed cannot change it from an interlocutory to a final judgment. Feitel v. Feitel, 169 La. 384, 125 So. 280, and authorities cited.

"And it is clear that the judgment appealed from is not such a judgment as may work irreparable injury. When the final judgment to be rendered by the district court comes before this court for review, the court in its decree can restore the parties, without loss of any right under the pleadings, to the identical position which they respectively occupied before the interlocutory judgment complained of was rendered. Feitel v. Feitel, supra."

Later in Reeves et al. v. Barbe, 200 La. 1073, 9 So.2d 426, the Bossier's Heirs,

Trcka and Feitel cases were cited with approval. The same was done in Carmody v. Land et al., 207 La. 625, 21 So.2d 764, in support of a holding that the complained-of ruling dismissing a reconventional demand was an interlocutory judgment causing no irreparable injury and from which no appeal could be taken.

Meanwhile there was presented for determination in Benham, Ziegler & Company, Inc., v. Mouledoux, 175 La. 711, 144 So. 428, 429, the question of whether or not a judgment ordering an accounting was of the kind from which an appeal would lie. In answering it in the negative the court said:

"A judgment, rendered by a trial judge, ordering an accounting, whether signed by him or not, is not a final or definitive judgment, but is an interlocutory one. * * * It is not, however, an interlocutory judgment, which may work irreparable injury. The error, if any, in ordering the accounting, is such a one as may be corrected by appeal, after the case is finally disposed of in the trial court. * * *

"The reason why the law does not grant an appeal from such a judgment as the present is because it does not favor the bringing up of cases by fragments. * * *"

The above language from the Benham case was quoted approvingly in State ex rel. Knighton et al. v. Derryberry et al., 188 La. 412, 177 So. 256; also it was the basis for the dismissal of an appeal in Cotton v. Wright, 214 La. 169, 36 So.2d 713, which had been taken from an interlocutory judgment ordering the defendant husband to account to the plaintiff wife (between whom a separation had been decreed) with respect to the community of acquets and gains.

With reference specifically to the kind of judgment from which an appeal in a partition proceeding will lie there is a paucity of decisions in our jurisprudence. Seemingly appropriate, however, is Marionneaux et al. v. Succession of Marionneaux, 28 La.Ann. 392, in which the court said:

"Two appeals have been taken in this case, one from an order homologating the report of experts and the other from an order directing a partition to be made in kind, and referring the parties to a notary to complete the partition. A motion has been made in this court to dismiss these appeals, on the ground, among others, that the orders appealed from are interlocutory only, and do not work an irreparable injury. Whatever may be done by the notary will only amount to a project for a partition, which will not bind any one until the same shall have been presented to the court for final homologation; and from that judgment of the court, homologating the partition, any one interested can appeal.

"This court said in the case of Gay v. Marionneaux et al., that, 'according to said article all orders and rulings of courts rendered on all contestations pending the operation of the partition before the notary are interlocutory, and any party feeling ag-

grieved has his remedy, and may be relieved when the partition is presented for final homologation, and it is from the judgment thus rendered that an appeal would lie, subjecting the whole proceedings and all interlocutory orders to revision of this court.' 20 [La.] An[n]. 358; * * *."

And in the partition proceeding of Green v. Fisk, 103 U.S. 518, 26 L.Ed. 485, a suit commenced in a state court of Louisiana and later removed to the federal judiciary, the United States Supreme Court refused to consider an appeal of the defendant taken from a judgment decreeing the plaintiff to be the owner of one-half of the property involved and referring the matter to a master with directions to proceed to a partition according to law under the direction of the court. In dismissing the appeal the court said in part:

"In partition causes, courts of equity first ascertain the rights of the several persons interested and then make a division of the property. After the division has been made and confirmed by the court, the partition, if in kind, is completed by mutual conveyances of the allotments to the several parties. * * *

"A decree cannot be said to be final until the court has completed its adjudication of the cause. Here the several interests of the parties in the land have been ascertained and determined, but this is merely preparatory to the final relief which is sought; that is to say, a setting off to the complainant in severalty her share of the property in money or in kind. This can only be done by a further decree of the court. * * *

" * * * There are, still, questions in which the parties have each a direct interest, and they must be determined judicially before the relief has been granted which the suit calls for.

"In foreclosure suits it has been held that a decree, which settles all the rights of the parties and leaves nothing to be done but to make a sale and pay over the proceeds, is final for the purposes of an appeal. The reason is that in such a case the sale is the execution of the decree of the court and simply enforces the rights of the parties as finally adjudicated. Here, however, such is not the case, because still the court must act judicially in making the partition it has ordered. What remains to be done is not ministerial but judicial. The law has prescribed no fixed rules by which the officers of the court are to be governed in the performance of the duty assigned to them. The court is still to exercise its judicial discretion in directing the movements and approving the acts of its assistants, until it has finally settled and determined on the details of the partition, if made in kind, or directed a sale by the ministerial officers and prescribed the rules for a division of the proceeds."

From all of the foregoing it appears that under our present jurisprudence an appeal will lie only from: 1. A definitive or final judgment, being that which ultimately de-

cides all the points in controversy between the parties and effects a complete adjudication of the cause, or 2. an interlocutory judgment, determining a preliminary matter in the course of the proceeding, when it may cause irreparable injury.

The judgment from which the instant appeal was taken clearly is not definitive in character. By merely decreeing that the rule to show cause be recalled, annulled and set aside, its only effect obviously was a determination that, as to her primary demand, plaintiff failed to introduce sufficient evidence to establish the alleged concealment by defendant of community assets; and that, as to the other demand, the inventories taken on plaintiff's behalf were not binding on defendant inasmuch as he was not present or represented when they were prepared. Certainly the judgment would not have been res judicata as to plaintiff, had she taken no appeal, when attempting to show by way of opposition to the homologation of the completed partition that all community property had not been listed, including that described in her inventories.

And, contrary to the holding of the majority opinion, certainly the judgment appealed from does not approve the accounting furnished by the defendant. In his answer to the rule he prayed that the court expressly hold "that the community property consists of those properties set forth in Schedule 1 attached hereto"; but the judgment contains no language what-

ever expressly or impliedly maintaining this affirmative demand. That the district court did not pass upon such demand is also shown by the majority opinion itself, for therein it is said: " * * * However, as the judge of the district court, by merely dismissing plaintiff's rule, did not formally approve the account rendered by defendant, as prayed for by him, a remand of this portion of the case will be required as we cannot say, from the record before us, that all of the debts listed by defendant as community liabilities are proper."

Unquestionably, the judgment presently submitted for review did not decide all the points in dispute between the parties in this partition proceeding and settle off to the litigants their respective shares of the property in money or in kind, these being essentials for rendering the judgment definitive in character under the above discussed jurisprudence. Yet to be determined are such controverted matters (among others) as the exact properties belonging to the community, their values, the manner of dividing them (in kind or by licitation), and the community obligations.

The proper procedure for determining all disputes in partition proceedings, as I appreciate the law, is that the district judge enlists the services of a notary public to make a partition, under his supervision and direction and with all interested parties having the right to be heard before the notary, pursuant to the provisions of Articles 1027 and 1028 of the Code of Practice.

When the partition is completed by the notary it is presented to the court for homologation, at which time all oppositions thereto are considered and passed upon. Code of Practice Articles 1029 to 1032, inclusive. Following the determination of the oppositions there is rendered a judgment homologating the partition. From this judgment, evidencing the final adjudication of the cause, an appeal may be taken. And on the appeal a review can be had of all rulings made on the various disputes arising during the course of the partition proceedings.

The ruling from which the instant appeal was taken pronounced only on a preliminary matter. It is, therefore, interlocutory, not definitive. And it cannot cause plaintiff any irreparable injury. As was said in Mann v. Edenborn, supra, in applying the test laid down in the Pflug and Feitel cases, both supra, "when the final judgment to be rendered by the district court comes before this court for review, the court in its decree can restore the parties, without loss of any rights under the pleadings, to the identical position which they respectively occupied before the interlocutory judgment complained of was rendered." In this connection it is to be remembered that the plaintiff herein is protected by an injunction against defendant, preventing his selling or encumbering the property; and all of defendant's books and records are in the possession of the court under the writ of subpoena duces tecum. More-

over, even if defendant should violate the injunction, it appears certain that plaintiff can be adequately compensated for any monetary loss that she may sustain.

The holding of the majority herein that the district court's judgment is definitive is predicated on Cary v. Richardson, 35 La. Ann. 505, and Garland v. Dimitry, 164 La. 875, 114 So. 718. With reference to these decisions this court, through the author of the Garland opinion, observed in Feitel v. Feitel, supra: " * * * The cases of Cary v. Richardson, 35 La.Ann. 505, and Garland v. Dimitry, 164 La. 875, 114 So. 718, which latter follows the Cary Case, may be differentiated from the present case on the ground that the judgments, appealed from in those cases, disposed of the entire merits of the cases, with the exception of an accounting to be done, which was to be done in furtherance, or in execution, of the judgments, forming the bases of the appeals."

As pointed out above the instant judgment clearly does not dispose of the entire merits of the partition proceeding, leaving only an accounting to be done in furtherance or in execution of such judgment. From which it follows that such decisions are inapplicable here.

Since the appeal under consideration is not from a definitive judgment, nor from an interlocutory decree which may cause plaintiff irreparable injury, my conclusion is that we are without right to entertain it. Plaintiff's remedy for obtaining a review

of the ruling complained of herein is to appeal from the final judgment to be rendered, being that which ultimately homologates the partition.

For the above reasons I respectfully dissent.