HALL, Judge.
On May 9, 1958 Mrs. Ethelyn G. Bynacker filed a suit for separation from bed and board against her husband, Bernard E. McMichael, on the ground of cruelty. On January 27, 1961 while the suit for separation was pending untried she filed a suit against her husband for a final divorce based on the ground of two years living separate and apart. Mr. McMichael filed an answer to the latter suit in which he admitted the two years’ separation and reconvened for a judgment of divorce in his favor. Judgment of divorce was rendered in favor of Mr. McMichael on October 18, 1961.
The present appeal arises out of proceedings to effect a partition of the community property.
The record before us consists of four volumes and is in such a confused state that it is almost impossible to follow. The confusion may be, and probably is, attributable to a number of causes and we do not undertake to place the blame therefor on any particular person or persons.
The record reveals (insofar as is essential to an understanding of the present appeal) that a judgment was rendered ordering a partition of the community property, inventories were taken, the real estate was ordered sold and a notary was appointed to complete the partition. The partition has never been completed due to may disputes between the parties. On December 7, 1964 Mrs. Ethelyn Bynacker McMichael filed a petition praying that her husband be ordered to give an accounting to her of certain assets which she claimed to belong to the community.
On June 29, 1965 the Trial Judge rendered a six page judgment, the preamble of which reads as follows:
“This cause came on for trial to determine the assets arising from the community of acquets and gains, heretofore existing between the parties; the value of these assets; and, to determine, recognize and establish the respective rights of said parties therein and/or thereto * ijt * ft
Some parts of the judgment were in favor of Mrs. McMichael and some parts in favor of her husband.
Mr. McMichael appealed suspen-sively from one portion of the judgment but has abandoned his appeal. Mrs. Mc-Michael appealed devolutively from the entire judgment.
*338 During the argument of the case before us the author of this opinion raised the question whether the judgment appealed from is one from which an appeal is allowable, for it seemed to him not to be a final judgment but to constitute mere instructions to the notary appointed to conduct the partition, and that to permit an appeal prior to the final judgment homol-ogating the partition would open the door to any number of “piece-meal” appeals. However since submission of the case our attention has been called to the decision of the Supreme Court in Oliphint v. Oliphint, 219 La. 781, 54 So.2d 18, which seems to settle the matter as to the appealability of a judgment such as the one presented here.
The appellant, Mrs. McMichael, relies upon eight assignments of error which we will consider in the order presented in her brief.

Assignments Nos. 1 and 2

Appellant contends that it was error to hold that the period of accountability by her husband shall commence from January 27, 1961, the date of the filing of the action for divorce; and that it was error to hold that her husband should not account for “bonus salary”.
Appellant’s first and second assignments of error are predicated upon her contention that her husband owes an accounting to her of all the community assets from the date she filed her suit for separation (May 9, 1958) instead of from the date she filed her divorce action (January 27, 1961) as held by the Trial Court.
In paragraph III of her petition' for divorce appellant stated in part “ * * * petitioner filed a suit against the defendant for a separation from bed and board which said suit is being dismissed without prejudice by your petitioner herein, simultaneously with the filing of this petition for a divorceThis together with other allegations made by her in various other pleadings scattered throughout the record leaves no doubt in our mind that appellant intended to, and did, abandon her separation suit on January 27, 1961 when she filed the suit for divorce.
Ever since the decision of the Supreme Court in Tanner v. Tanner, 229 La. 399, 86 So.2d 80, it has become the settled jurisprudence of this state that the marital community is dissolved as of the date of the judgment of separation or divorce, and not as of the date of filing suit therefor.
The husband therefore remains the head and master of the community until the rendition of a judgment dissolving it and (except for the protection provided the wife by Articles 149 and 150 of the Civil Code) the wife cannot legally force him to account for his administration thereof, absent allegations and proof of concealment or disposition of community property with intent to defraud her.
As pointed out in Tanner, supra, Civil Code Articles 149 and 150 (LSA-C.C. Arts. 149, 150) provide protection for the wife’s interest in the community which continues to exist during the pendency of the suit for separation or divorce. Article 149 authorizes her to require an inventory of its assets as they exist on the date of the filing of suit and an injunction restraining her husband from disposing of any part thereof. Article 150 provides that from the day suit is brought the husband cannot incur any debt on account of the community nor dispose of any of the immovables belonging to the same and any alienation made thereof in fraud of his wife’s rights is null. Subject to these codal provisions the community remains intact under the husband’s administration until terminated by judgment.
The Trial Judge, correctly in our opinion, found that Mrs. McMichael failed to establish that her husband secreted or otherwise disposed of any of the community assets in fraud of her rights.
*339 Mrs. McMichael, having abandoned her suit for separation, the Trial Judge correctly held that the husband’s accountability for the assets of the community commenced as of January 27, 1961, the date of the filing of the action for divorce in conformity with the protection afforded the wife during the pendency of the suit by Civil Code Articles 149 and 150.
The Trial Court however denied Mrs. McMichael’s claim for an accounting for the salary paid her husband by his employer during the pendency of the divorce proceedings. In our opinion the salary paid him during this period is not comparable to the income, such as dividends and rentals, derived during this period from assets owned by the community as of the date suit was filed.
While Mr. McMichael’s salary during this period falls into the community, since he remains head and master thereof until rendition of the divorce decree, he would not be obliged to account for any expenditures therefrom, not in fraud of his wife’s rights, unless there is some provision of the Code which would require it. We know of no such provision. The provision of Civil Code Article 150 which makes it unlawful during the suit’s penden-cy for the husband “to contract any debt on account of the community” does not in our opinion make him accountable for expenditures from salaries received by him during that time but simply means that he cannot contract any debt which would be chargeable against the assets of the community as they existed when suit was filed or against the income derived from such assets during the pendency of the suit.

Assignments Nos. 3 and 7

Appellant assigns as error the de- . nial of her claim for rentals on the house located at 1310 Clay Street from the date the separation suit was filed to the date of the rendition of the divorce decree, and in-denying Her claim for .rentals from the date of the divorce decree to September 4, 1963, the date of the partition sale of the real estate.
The record shows that the residence in question was occupied by a Mr. J. W. Carroll and his family. On the question of rentals the Court in his written “Reasons for Judgment” said:
“6. The contention of Mrs. McMichael that she is entitled to an accounting of the rental received from J. W. Carroll for the community property designated as 1308 Clay Street, Kenner, Louisiana, or in the alternative that Mr. McMichael be charged with the loss of the fair rental value of the premises occasioned by his granting the free use of the same to the occupants is without merit. The record does not reflect by a preponderance of evidence that Mr. McMichael ever rented the premises nor does it contradict his statement, with any substantial testimony other than that of Mrs. Mc-Michael, that he ever received any rental from the tenant. He stated he permitted the Carrolls to continue their occupancy of the property at the time of the separation in consideration of their maintaining the same together with the adjoining residence owned by. the community. Mr. Williams (sic) North, a realtor and a witness for Mrs. McMichael, testified that both properties ‘had the appearance of being well-maintained for rental property.’ The Court is of the opinion that Mr. McMichael acted as a prudent administrator by allowing the Carrolls to remain on the property while the parties were living apart, in order to conserve the assets belonging to the community by proper maintenance, and thereby prevent the accelerated depreciation usually experienced with vacant property.”
We find no manifest error in the Trial Court’s findings and conclusions of fact, Under the circumstances found by the Trial Judge the arrangement with Mr. Carroll redounded to the. benefit of the. community rather than ■ to the personal’ *340 benefit of Mr. McMichael and we agree with the Court’s denial of Mrs. McMi-chael’s claim for rentals or for the loss of the fair rental value of the property.

Assignments Nos. 4 and 6

The Trial Court denied Mrs. Mc-Michael’s claim to a community interest in the sum of $9,500.00 withdrawn by her husband from the Guaranty Bank and Trust Company of Gretna, Louisiana in April 1958. Appellant contends that her husband withdrew this amount from a savings account just prior to the filing of her suit for separation and put it in a checking account from which he subsequently made withdrawals for which he has not been made to account.
Since we are of the opinion that Mr. McMichael owes no accounting for his administration of the community property prior to January 27, 1961, the date his wife filed suit for divorce, she cannot force him to account for the $9,500.00 withdrawn April 17, 1958, absent allegation and proof that he made the withdrawal with the intent to defraud her. We find no allegations of fraud in Mrs. McMichael’s pleadings and on the question of proof of fraud the Trial Court stated in his written “Reasons for Judgment”:
“The Court further finds that Mrs. McMichael has failed to establish with competent evidence that her former husband has secreted or otherwise disposed of any of the assets belonging to the community of acquets and gains, thereby depriving her of her just share in the community property.”
We find no manifest error in the Court’s findings.
Appellant also contends that the Court erred in holding that the sum of $3,380.00 advanced to her by her husband from October 18, 1961 to October 17, 1962 was from his separate funds and is to be charged against her share of the community.
In support of her contention, appellant refers the Court to a letter addressed to appellant by Mr. F. Irvin Dymond, her then attorney, in which he states in part:
“For the purpose of clarifying the arrangement, I might also mention that the $65.00 per week which you will receive until the community is settled or until one year elapses, whichever occurs first, is being paid by him from his own funds and you are not to be required to account for these payments at the time the community is settled." (Emphasis supplied.)
However we have not been referred to anything in the record, and have found nothing therein, which shows that Mr. Mc-Michael agreed not to require reimbursement for the payments. It will be noted that the weekly payments aggregated $3,-380.00 and were paid after the community had been dissolved.
The Trial Court ruled that Mr. Mc-Michael’s claim for reimbursement of this sum would be honored, stating (Tr. 676) :
“ * * * The Court is going to honor this claim. There was no legal obligation on him to support his wife at the time the payments were made. If it is the contention of the wife that these were donations and gifts, then the duty rests upon her to prove it by a preponderance of evidence. The self-serving statements of her attorney reflected in his correspondence with his client is not of sufficient probative value to warrant the Court to conclude that they were gifts.”
We have been unable to find any proof in the record showing that these weekly advances by Mr. McMichael to his divorced wife, out of his own funds were intended as gifts, and we are of the opinion that the judgment appealed from is correct in requiring the $3,380.00 item be charged against appellant’s share in the community.

Assignment No. 5

Appellant contends that the Trial Court erred in ordering the September 4, 1963 *341 partition sale of the immovables and certain movables belonging to the community to be made executory.
The partition sale was ordered at the instance of appellant by two motions filed by her on May 1, 1963, one pertaining to the real estate, and the other to certain liousehold furniture.
The Court ordered the real estate to be sold for "Cash. At the moment of adjudication purchaser to deposit 10% with the .Sheriff of Jefferson Parish; the balance 'of the price of adjudication to be paid when the Sheriff issues deed confirming the adjudication * *
The order for the sale of the household furniture stipulated that it be sold for “Cash to be paid by purchaser at the-moment of adjudication; purchaser to promptly remove articles from the premises.”
'The Sheriff’s advertisement covered both the real estate and the furniture and stated that the sale was to be made for “Cash”. The date of the sale was fixed for September 4, 1963.
On August 30, 1963 appellant filed a rule to postpone the sale which was heard by the Trial Court on September 3 and dismissed.
At the sale which was conducted by the Sheriff on September 4, 1963 part of the real estate and movables was adjudicated to appellant and the remainder to her husband. Each of them made a 10% deposit on the respective pieces of real estate adjudicated to them. The record does not reflect whether the movables were paid for in cash.
The sale of September 4, 1963 has never been consummated. The Sheriff has delivered no titles and nothing further has been paid by the adjudicatees.
Appellant now contends that “there is .an apparent nullity in the sheriff’s sale” since the terms of the advertisement have not been complied with nor has the balance of the purchase price been paid within the 30 days required by LSA-R.S. 13:4360.
The record shows that after appealing from the entire judgment, appellant on August 27, 196S filed a motion in the District Court to dismiss the appeal insofar as it affected the real estate and certain other items, and in the alternative reserved her right “to partially dismiss” her appeal in the Court of Appeal. (See Tr. 494). Furthermore on September 8, 1965 appellant entered into a joint stipulation to make a partial partition of the stock and real estate belonging to the community (Tr. 498) and as late as October 1965 appellant expressed a desire to have the sale consummated (See Tr. 510, 511).
We are of the opinion that appellant is estopped by her actions to contend that the sale of September 4, 1963 is invalid, at least insofar as the asserted discrepancy in the advertisement is concerned.
LSA-R.S. 13:4360 relied upon by appellant reads as follows:
“§ 4360. Resale if required payment not made; resale if adjudicatee fails to pay balance
A. If the terms of the sale provide for the full payment of the adjudication price at the moment of the adjudication, or if the terms provide for a deposit, and the purchaser fails to make such full payment or deposit, the seizing creditor may direct the officer conducting the sale either to re-offer the property immediately, or re-advertise the property for sale as provided in Sub-section C of this Section. If the property is re-offered for sale immediately, the first purchaser is relieved of any liability.
B. If the purchaser makes the deposit required by the terms of the sale, and fails to pay the entire purchase price within thirty days after the adjudication, on demand of any interested party the *342 officer conducting the sale shall re-advertise the property for sale as provided in Sub-section C of this Section.
C. When the property is re-advertised, it shall be in the manner required by law for the advertisement of the original sale, and the second sale is at the risk and for the account of the first purchaser. Should there be a loss because of the second sale, the first purchaser is liable for such loss; but should the property bring a higher price at the second sale, the first purchaser has no right to the increase.
The first purchaser may not bid at a second sale. Added Acts 1960, No. 32, § 6.”
We are of the opinion that this statute has no application to the matter at hand. This is a matter involving joint owners. No seizing creditor is involved. Furthermore there has been no demand or request by either of the parties or by anyone else that the property be advertised for sale.
We find no error in that part of the judgment appealed from which ordered that the sale of September 4, 1963 be made executory. In this respect the Trial Judge said in his written “Reasons for Judgment”:
“ * * * These adjudications were suspended due to the inability of Mrs. McMichael to consummate her purchase of certain of the realty, by the payment of the purchase price. As a result of the liquidation and distribution of community assets, Mrs. McMichael is now in a position to honor these obligations. The rights of the parties in the realty belonging to the community of acquets and gains has therefore been settled by the judicial sale made by the Sheriff of this Parish, and no further action in this regards (sic) is required.”

Assignment No. 8

Appellant contends that it was error for the Trial Court to find that the 1960 Impala Chevrolet automobile was not a part of the community.
Mr. McMichael denied that he ever owned such an automobile and there is no satisfactory proof that he ever did.
For proof of his ownership, appellant relies on a letter received by her attorneys from the Motor Vehicle Division of the Department of Revenue (See Tr. 534F) which states that motor vehicle licenses for the years 1961 and 1962 covering a 1960 Impala Chevrolet automobile were issued in the name of Mr. McMichael. But the letter does not show that he ever owned it. In fact it shows the title to the car was registered in the name of Yellow Manufacturing Acceptance Corporation and was transferred by that corporation to one Joanne M. Lopez and that as of the date of the letter (December 14, 1964) title was in the name of one Virgil T. McElroy.
Mr. McMichael testified that the car was originally purchased by the Yellow Manufacturing Company or by George Engine Company; that it was never owned by him but he was permitted to drive it when his 1957 Buick broke down and became useless. This explains why the licenses, were issued in his name.

Damages for Frivolous Appeal

Mrs. McMichael contends that the-suspensive appeal taken by Mr. McMichael from the judgment of June 29, 1965 and later abandoned by him was frivolous and prays for damages under the provisions-of LSA-C.C.P. Art. 2164. In our opinion the record in this case does not warrant the assessment of such damages.
For the foregoing reasons the judgment appealed from is affirmed and the record is remanded to the District Court for completion of the partition according to law;, costs' of this appeal to be borne by Mrs.. *343 .Ethelyn G. Bynacker McMichael, all other •costs to await final determination of the •cause.
Judgment affirmed and cause remanded ■for further proceedings.