**26 So.2d 829**

**WAINER et al. v. WAINER.**

No. 37470.

May 27, 1946.

Lewis A. Giraud, of New Orleans, for defendant and appellant.

Isaac S. Heller, of New Orleans, for plaintiffs and appellees.

HAWTHORNE, Justice.

Plaintiffs, Uriah Wainer, George M. Wainer, and Rose Wainer, wife of Harry

Blackman, instituted this suit, praying that their father, Harry Wainer, be ordered to account to them in their proportionate shares for any and all property belonging to the estate of their deceased mother, Mrs. Hannah Lichtenstein Wainer, in the possession of defendant, and that the defendant be condemned as a spoliator and ordered to surrender all such property in kind or, if such delivery be shown to be impossible for any just or legal cause, to surrender the proceeds thereof, in order that the property may be inventoried, administered, and disposed of according to law for the interest of all persons concerned.

Plaintiffs filed this suit in the Civil District Court for the Parish of Orleans, Division "B," on February 12, 1942, alleging that they are children and forced heirs of Mrs. Hannah Lichtenstein Wainer, deceased, and Harry Wainer; that their mother, Hannah, Lichtenstein, died on May 1, 1934, in the City of New Orleans, leaving real and personal property; that all the property owned by the deceased at the time of her death consisted of her one-half interest in the community of acquets and gains which existed between her and the defendant, Harry Wainer; that, upon the death of their mother, the defendant took possession of all the property belonging to her succession without an order of the court and inventory and without administering her succession according to law; that their father, Harry Wainer, remarried in May, 1937, and by this remarriage lost the usufruct upon the property belonging to petitioners' mother, Hannah Lichtenstein Wainer; that as a result of their father's remarriage the property left by their mother now belongs to her heirs in full ownership, and that, notwithstanding this fact, the defendant continues in possession of all of said property both real and personal, and refuses to account to petitioners for any of the property or to furnish an itemized statement thereof in order that the property may be inventoried and administered according to law; that the defendant never opened the succession of petitioners' mother, nor have they been placed in possession of the property left by her; that one of the petitioners, George M. Wainer, recently opened the succession of their mother, and that in those succession proceedings Benjamin M. Goodman, notary public, was appointed to take an inventory of all property belonging to the succession of Hannah Lichtenstein Wainer; that the notary by registered letter requested the defendant herein to furnish him with an itemized statement of all the properties belonging to said estate, and that the defendant has never complied with this request and has refused to furnish any information whatsoever as to the properties in his possession belonging to the estate of his deceased wife.

No exceptions or pleas of any kind or nature were filed to the petition, and on March 23, 1942, the defendant, Harry

Wainer, answered, admitting all the material allegations of fact contained in the petition. In this answer defendant admits that he never complied with the request of the notary public to furnish an itemized statement of all properties belonging to the estate of his deceased wife, and gave as his reason therefor that certain necessary books, documents, and papers had been removed from his possession without his knowledge and consent, and that he was forced to institute suit for their recovery; that this suit was compromised by an agreement that the books and records above referred to were to be returned to him, and that, as soon as possible after these books and records are made available, he will prepare and furnish to the notary full information as to the properties belonging to the estate of his first wife at the time of her death.

On June 1, 1942, the Honorable Nat W. Bond, district judge, of his own motion ordered that the case be referred to the commissioner for the Civil District Court for the Parish of Orleans, with instructions that the commissioner proceed to hear, take, and have transcribed the evidence in this case and to present it to the court with his findings and recommendations.

On June 22, 1942, the commissioner proceeded with the trial of the case, it having been continued to this date from June 15, 1942, due to the illness of the defendant, Harry Wainer, and on October 23, 1942,

the commissioner filed his report. Both the plaintiffs and the defendant took various exceptions to this report. However, the trial judge accepted it, and on January 15, 1943, rendered judgment fixing the gross value of the community of acquets and gains formerly existing between the defendant, Harry Wainer, and his deceased wife, Hannah Lichtenstein, at the sum of $199,060.13 and fixing the proceeds and revenues derived by the defendant from capital assets belonging to the community since the defendant remarried on May 1, 1937, at $110,931.57, and ordering that the notary appointed by the court in the succession proceedings of Mrs. Hannah Lichtenstein Wainer be authorized to inventory the sum of these two amounts, or $309,991.70, and reserving to the defendant whatever right or claim he had or may have had against the community of acquets and gains formerly existing between him and his first wife.

On July 29, 1943, the National Bank of Commerce in New Orleans filed a petition in these proceedings, alleging that the defendant, Harry Wainer, departed this life on February 10, 1943, and that his succession had been opened in the Civil District Court for the Parish of Orleans on February 11, 1943, and that, under the terms of the last will and testament of the deceased, petitioner was made testamentary executor of his estate, and letters as such were issued to it under date of February 25, 1943; that the testamentary executor in its capa-

city as such has been requested by one of the testamentary legatees to take an appeal from the judgment rendered herein, and, further, that it, as such testamentary executor, is aggrieved by the judgment. It prayed that it be recognized as a party defendant in this case and for an order of devolutive appeal. On July 30, 1943, the district court entered an order recognizing the testamentary executor as a party defendant herein and granting to it a devolutive appeal to this court.

From the record in this case we find the following facts:

During the existence of his first marriage, the defendant, Harry Wainer, was engaged in the fur business and owned considerable real estate situated in the Parish of Orleans. In the summer of 1933, his wife was seriously ill, suffering from heart trouble. After being informed by a physician that her death might occur at any time, the defendant, upon the advice of some attorney (not one of the attorneys whose names are of record in this case), took steps to prevent his business and properties from becoming involved in succession proceedings in the event of his wife's death so that he could continue to operate and control them without interference. To accomplish this purpose he organized two corporations, one styled H. Wainer Co., Inc., and the other Wainer Realty Co., Inc. To H. Wainer Co., Inc., he transferred all of the assets of the fur business, and to Wainer Realty Co., Inc., he transferred all of the real estate standing in his name, taking the capital stock of these corporations in payment therefor. The other subscribers to the articles of incorporation of both these corporations were members of his family, and a nominal number of shares was issued to each, but the actual stock certificates were never delivered to any of them, nor did they actually pay for these shares.

Shortly after these corporations were formed, Mrs. Hannah Lichtenstein Wainer died intestate. Soon after her death defendant proceeded to liquidate both of these corporations and in his own right continued absolute control of all the property which had stood in the names of the corporations. The other original subscribers to stock never received anything from the liquidation.

After the liquidation, defendant continued to operate and conduct the fur business as a going concern until November, 1941, at which time he sold all of his interest therein. He also disposed of all the real estate which formerly stood of record in the name of Wainer Realty Co., Inc.

Harry Wainer was married first to Hannah Lichtenstein, and of this marriage seven children were born, all of whom survived their mother, who died on May 1, 1934, three of whom were minors on the date of her death. The surviving husband, Harry Wainer, defendant in the court below, retained possession of all the property, never opened his wife's succession, never took an inventory of her property, and

never legally qualified as tutor for his minor children.

On May 1, 1937, defendant contracted a second marriage, which terminated his legal usufruct, and notwithstanding this fact he continued to possess, enjoy, control, and manage all of the property and effects of the community without accounting therefor in any way whatsoever. No issue was born of his second marriage, and no community existed between defendant and his second wife, there being a separation of property between them by virtue of a marriage contract.

From the testimony adduced before him, the commissioner found, and correctly so, that on the date of the death of defendant's first wife neither owned any separate property, and that all the property owned by them at the time of her death belonged to the community of acquets and gains existing between them, and that, at the time the case was tried in the court below, none of the community property remained in the hands of defendant, he having disposed of it in its entirety, and that under these circumstances defendant should be required to account for its value.

In his report the commissioner found that the object of this suit is to establish the amount which the defendant owes to the children of his first marriage, and found that he is indebted to them for the value of their mother's interest in the community as it existed on the date of her death, May 1, 1934, plus all the income en-

joyed by the defendant therefrom from the date of his remarriage, May 1, 1937, to the date of settlement.

The commissioner found that the value of the community existing between the defendant and his first wife at the date of her death on May 1, 1934, was $199,060.-13, of which amount the defendant has to account for one-half to the heirs of his first wife.

According to the commissioner's report, the profits and revenues received by the defendant since his second marriage, all of which were produced by capital belonging to the community of his first marriage, derived from the fur business and rentals and profits produced by the real estate, amounted to $110,931.57, and that of this amount defendant must account for one-half to the heirs of Hannah Lichtenstein Wainer.

In this court appellant, the testamentary executor, urges that the court below erred in accepting the report and recommendations of the commissioner and rendering judgment thereon, and prays that the judgment be set aside and the case remanded to the lower court for further proceedings.

Appellant's first ground of complaint is that the three plaintiffs in this proceeding prayed only for an accounting of the amount due them by the defendant, Harry Wainer, and that the judgment rendered should be confined thereto.

The lower court in its reasons for judgment and the commissioner in his report

cite the case of Tomme v. Tomme, 174 La. 123, 139 So. 901, holding that, when the community has been terminated, the wife or her heirs may sue for her share of the property belonging to the community whether the community has been liquidated or not, but that neither the wife nor her heirs can sue for a money judgment for the value of her share of the community until the community has been fully liquidated and the community debts paid, for the reason that, when the wife or her heirs sue for the property itself, they take it subject to the debts. After stating this proposition of law, the lower court pointed out that in the instant case none of the community property remains in the hands of the defendant, and that therefore all the court can do is to require him to account for its value.

We do not think the court erred in finding the gross value of the community of acquets and gains formerly existing between the defendant and his wife, and in finding the amount of profits and revenues derived by the defendant after his remarriage from the capital assets belonging to the community, and in authorizing the notary appointed by the court in the succession proceedings of defendant's deceased wife to inventory the assets in accordance with law. In doing so the lower court very wisely said:

"Since the defendant has not objected to the pleadings in the form in which they are filed, and since the allegations of plaintiffs' petition show that the estate of decedent, Hannah Lichtenstein, has been opened and a notary appointed to take an inventory, and that the defendant has failed to cooperate with the notary in the taking of said inventory and to assist in any manner in winding up the estate of his late wife, this court, in order to avoid further litigation in the premises, since the succession proceedings of the late Hannah Lichtenstein are also in Division B of this Court, will affirm the recommendations of the Commissioner and enter a judgment in accordance with said recommendations * * *."

Appellant's second ground of complaint is that the commissioner should have continued the hearing in order to permit the defendant to present his replies to allegations made at that hearing and to produce evidence in contravention thereof.

In his report the commissioner points out that at the close of plaintiffs' testimony defendant's counsel requested a continuance for the purpose of compiling the general ledger account of the defendant's business from such books as were in evidence, and that he refused to grant this continuance for the reason that the defendant's counsel had previously announced his readiness to proceed with the trial; that the uncontradicted testimony of plaintiffs' witnesses was to the effect that the books were of no value in determining this controversy, and, further, that the books had been available to the defendant and his

counsel for over two months before the case was set for trial.

Under these facts we think that the grounds urged by counsel for the defendant were not sufficient to justify a continuance, and that the commissioner did not abuse his discretion by refusing it, and counsel has not cited to us any authority to the contrary.

■ Appellant's third ground of complaint is that no amount of the sum due by defendant to the three plaintiffs herein should have been determined by the court without first appointing an independent and disinterested certified public accountant to prepare accurately such figures.

As we understand the judgment rendered herein, it does not fix any definite sum due by the defendant to the three plaintiffs, but merely fixes the gross value of the community estate and the profits and revenues received by the defendant since his second marriage which were produced by capital belonging to the community. The testimony discloses that the defendant, Harry Wainer, made a practice of tearing out the pages of all the books of H. Wainer Co., Inc., and Wainer Realty Co., Inc., as soon as the auditor gave him a report and then using the books for some other purpose. Since these records have been destroyed, we fail to understand how a certified public accountant could accurately determine the question here involved.

The commissioner in the court below in determining the gross value of the com-

munity and the profits derived therefrom did so from the best evidence available, and any error in his findings is due entirely to defendant's own fault in not having his wife's property inventoried and in confusing his accounts with hers and in failing to account to his children upon his remarriage, and, further, in failing to cooperate with the notary and the commissioner in any way whatsoever.

Appellant's fourth ground of complaint is that the cash consideration shown by the notarial acts as having been paid for the real estate sold by Wainer Realty Co., Inc., cannot be inquired into collaterally, and that the mere uncorroborated testimony of a single witness not a party to these transactions should not be considered by the court in view of the provisions of Articles 2275 and 2276 of the Revised Civil Code.

The testimony shows that the amount of the consideration named in each of these acts was the assessed valuation of the property, that the consideration was not paid, and that, after reacquiring these properties, Harry Wainer sold them for a total consideration of $38,450, the properties being designated in the commissioner's report as the Decatur Street property, the Milan Street property, and the Jefferson Avenue property.

■ In determining Hannah Lichtenstein's interest in these properties, the commissioner entirely disregarded the corporate fiction and found as a matter of fact that the real estate itself formed a part of

the community as of the date of her death, and that her heirs are entitled to one-half of the price for which they were ultimately sold by the defendant himself.

In this case the commissioner and the court were not dealing with the title to, or ownership of, these pieces of real estate, but were endeavoring only to fix the value thereof. Under all the facts and circumstances disclosed by this record, we think the commissioner and the court below very properly disregarded the corporate fiction, for these corporations were formed by the defendant for the sole and only purpose of retaining the control and management of the properties without having to institute succession proceedings. The commissioner and the court were attempting to evaluate the community and for this purpose properly disregarded the attempt on the part of the defendant to diminish the value of his wife's estate by ingenious manipulation.

■ Appellant's fifth ground of complaint is that the value of the furs in the possession of the defendant on the date of his wife's death should not have been determined by hearsay evidence of a single uncorroborated witness.

It is true that the value of these furs was proved by the testimony of a single witness, but this proof was made without objection on the part of the defendant and was the only evidence adduced as to the value of these furs. The commissioner and the court below properly accepted this valuation, which was undenied and uncontradicted by the defendant.

■ Appellant's sixth ground of complaint is that the cash in the Canal Bank & Trust Company in liquidation, appraised at $2100, due to defendant by that bank, cannot be computed by reference to the case of In Re Canal Bank & Trust Co., Intervention of Wainer, 178 La. 961, 152 So. 578, as that case had reference to amounts due by the bank to depositors as of March 1, 1933, when the bank closed, and not to amounts due on May 1, 1934, the date of Wainer's first wife's death.

The only evidence offered by plaintiffs as to the amount the defendant had on deposit in his personal account with the Canal Bank & Trust Company was the finding of this court in the above cited case that the defendant was there claiming dividends on the sum of $2809.10, the balance due on his deposit after withdrawals by him of 5 per cent of the deposit, made available to the depositors by the bank in liquidation, and by the further reduction of a sum in part compensation of a note which he had endorsed. This balance, of course, was frozen. However, due to the fact that the bank in liquidation had paid dividends to the depositors equal to 70.75 per cent of their original deposits at the time the commissioner filed his report, the lower court accepted the commissioner's report and placed a valuation of $2100.00, or approximately 75 per cent, on the balance of defendant's deposit as of May 1, 1934.

The commissioner found that the decision in the cited case was rendered and became final prior to the death of defendant's wife, and, due to the fact that the balance of the deposit claimed by defendant was frozen, he took the position that it was fair to assume that this was the correct balance as of the date of her death, May 1, 1934.

Appellant does not claim that there was no deposit in the bank in liquidation or that the valuation placed thereon by the commissioner was not correct, but contends only that the amount thereof is not correctly shown as of May 1, 1934.

At the time this evidence was offered in the lower court, no objection was made, and it was the only evidence offered to determine this question. It being the best evidence before the court, we think it was properly considered, and that appellant's objection is without merit.

■ Appellant's seventh ground of complaint is that the court below failed to recognize that the one-half community interest of defendant's deceased wife at the time of her death on May 1, 1934, was confined to shares of stock in the two corporations and did not extend to assets owned by these corporations, particularly not to real estate in the name of Wainer Realty Co., Inc.

What we have heretofore said with reference to the propriety of the commissioner and the court below in disregarding the corporate fiction and placing the valuation from the evidence before them on the assets which were actually owned by the community, although standing of record in the name of these two corporations, is applicable to this contention, which, in our opinion, is without merit.

We refuse to sanction and approve the method or scheme adopted by the defendant in his efforts to retain control and management of the property which rightfully belonged to his wife's estate, although such procedure may have been legal, or to sanction and approve his failure to account therefor after his usufruct had been terminated by his remarriage.

■ Appellant's eighth ground of complaint is that the usufruct held by Harry Wainer on the property belonging to the estate of his deceased wife was an imperfect usufruct, at the termination of which the defendant was responsible only for the value of the property at the time he acquired the usufruct, plus interest from the date of his remarriage.

In brief filed in this court, counsel argues that the entire estate of defendant's deceased wife consisted of her one-half interest in 171 shares of H. Wainer Co., Inc., and five shares of Wainer Realty Co., Inc., all standing in the name of Harry Wainer at the time of her death, and that the usufruct of these shares of stock was a perfect usufruct, but that upon the liquidation of these corporations the cash received in exchange for these shares of stock was subject to an imperfect usufruct, and that the only obligation imposed upon the usufructuary was that of returning to his wife's

heirs an equal amount of cash, plus legal interest from the date he remarried; or, in other words, that the surviving spouse had a perfect usufruct on the shares of stock which became an imperfect usufruct on the cash received upon the liquidation of the corporations.

In support of this argument he cites the case of Succession of Dielmann, 119 La. 101, 43 So. 972. In that case the surviving spouse in community ruled the liquidators of a bank to show cause why they should not turn over to her as usufructuary certain funds in their hands representing proceeds of bank stock which had been converted into money by the liquidation of the bank. These shares of stock previous to their conversion into cash by the liquidation of the bank had been subject to the usufruct of the surviving spouse. Opposition was made to this rule, in which it was claimed that the widow must furnish security or, if she failed to do so, the funds must be invested in other bonds or stocks. This court held that the provisions of the Civil Code with reference to the furnishing of security by the usufructuary do not refer to the usufruct of the surviving spouse under the usufruct laws, and that the usufructuary could not be compelled by the heirs to invest these funds in bonds or stocks.

In that case the court pointed out that the stock subject to the usufruct was converted into cash by the liquidation of the bank *and not by any act on the part of the usufructuary;* or, in other words, that the stock subject to the usufruct of the surviving spouse in the bank was converted into cash by the liquidation of the bank, and that under these circumstances the usufructuary had the right to use the cash subject to the obligation of returning an equal amount later to the husband's heirs.

In that case, as pointed out, the stock in the bank was not converted into cash by any act of the usufructuary, while in the instant case, as we have previously found, the corporations were formed by the defendant solely for the purpose of controlling and managing all of the property which would belong to his wife's estate without the necessity of succession or other legal proceedings, and we are convinced that the formation and liquidation of these corporations were mere paper transactions, and that the properties conveyed to these corporations were at all times under the exclusive control and management of the defendant himself as owner.

The judgment of the district court reserved to the defendant, Harry Wainer, whatever rights he had or might have had to set up any claims which he had or might have had against the community of acquets and gains formerly existing between him and his first wife, Hannah Lichtenstein. Since that judgment was rendered, the defendant has died, and, as pointed out hereinabove, the National Bank of Commerce in New Orleans has qualified as testamentary executor of his succession and by order of the district court has been made a

party defendant and is the appellant herein. For this reason it is necessary that the judgment appealed from be amended to substitute the testamentary executor as party defendant herein.

For the reasons assigned, the judgment is amended so as to substitute the testamentary executor, National Bank of Commerce in New Orleans, as party defendant and, as thus amended, is affirmed; appellant to pay all costs of these proceedings.