160 So.2d 375 (1964)
Succession of John Earl HECKERT.
No. 1200.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
*376 Titche & McDermott, New Orleans, for plaintiffs and appellees.
Hugh M. Wilkinson, New Orleans, for defendant and appellant.
Before McBRIDE, YARRUT and HALL, JJ.
McBRIDE, Judge.
John Earl Heckert and Anna I. Buch were married in 1912 and two children were born of the marriage, viz., John E. Heckert, Jr. and Mrs. Isabelle L. Heckert Hardie. The two children were of the full age of majority when their mother died intestate on July 24, 1938; her succession was opened in the Civil District Court for the Parish of Orleans, Docket No. 227-393; as per judgment therein rendered and signed August 8, 1938, Heckert was recognized as decedent's surviving husband in community and as such was sent into possession as owner of an undivided one-half interest in 710 shares of the capital stock of S. H. Kress and Company belonging to the community as represented by eight certain certificates issued therefor standing in his name, said certificates being described by number in the judgment; the two children were recognized as the sole heirs of their mother and sent into possession of the other undivided one-half of said shares, subject to the usufruct of their father thereon. Notwithstanding the change of ownership decreed by the judgment of possession, *377 the stock certificates remained as originally issued in Heckert's name and possession and he collected the dividends.
Besides the 710 shares inventoried in the wife's succession, there were 300 other shares of the Kress stock which belonged to the community represented by three certificates for 100 shares each standing in Heckert's name. These shares, for some unknown reason, were not mentioned in the succession proceedings. However, Heckert likewise had possession of the uninventoried certificates and collected the dividends. Of course, the two children acquired an undivided one-half naked ownership in said 300 shares immediately upon the death of their mother under the doctrine of le mort saisit le vif. LSA-C.C. arts. 940, 941.
John Earl Heckert married his second wife, Eunice Knobloch, on August 4, 1939, in New York; it was then that his usufruct on the property derived by his children from the first wife's succession terminated by the operation of law. See LSA-C.C. art. 916. Heckert made no attempt to deliver to his children their portion of the 1010 shares of Kress stock on which his usufruct had existed, and the children made no demand on him therefor, but were content to permit him to retain possession of the certificates and to collect dividends.
Heckert departed this life on March 3, 1961, leaving a last will and testament which has been duly probated herein by which he bequeathed to his second wife, Mrs. Eunice Knobloch Heckert, the disposable portion of his estate and to his two children he left their legitime. Out of the 1010 shares of Kress stock of which Heckert had possession upon his first wife's death, only three certificates were found among his effects, these standing in his name as originally issued and being each for 100 shares. Two of said certificates (7154 and 7155) were among those inventoried in the first wife's succession and one certificate (7158) was one of those which had been omitted therefrom.
The record discloses that Heckert had "donated" to his second wife at various times after their marriage 300 shares of the Kress stock which emanated from the first community, and that from time to time he had sold or otherwise disposed of 410 shares.
In the bank box of decedent and his second wife were found six certificates representing 400 shares, all issued to Mrs. Eunice Knobloch Heckert. Said shares were the subject matter of gifts to her by Heckert and for convenience a tabulation thereof is as follows:

 CERTIFICATE
DATE OF GIFT NUMBER SHARES
July 29, 1940 H-1529 100
December 17, 1942 H-9983 100
July 17, 1944 F-19232 50
 " F-19233 50
 " F-19234 50
 " F-19235 50

The "gift" of July 29, 1940 (Cert. H-1529) resulted from Heckert's surrender to the issuing corporation and cancellation of a certificate for 100 shares issued in his name which had been acquired during the second community. The last five mentioned certificates had been issued upon Heckert's surrender to the corporation and cancellation of three 100-share certificates which belonged to the first community and in which the two children had an undivided one-half interest.
Decedent's children (more than 21 years after the termination of the usufruct) have brought a suit against Mrs. Eunice Knobloch Heckert, in her individual capacity and also as decedent's testamentary executrix, attacking the donations inter vivos and mortis causa insofar as their interests derived from their mother in the donated shares of stock are concerned; they also plead that no gratuitous transfer of any of the stock could be made to the prejudice of their rights as forced heirs of their deceased father; alternatively, they allege that if the donations be decreed to be valid, then the value thereof must be ascertained *378 and brought back into the mass of his succession in order to determine their legitime. They pray that they be decreed to be the owners of and entitled to have delivered to them 605 shares of the capital stock of S. H. Kress and Company or the value thereof. In summary decedent's two children are claiming:

(1) Stock which they were
 placed into possession
 of in their mother's
 succession -------------- 355 shares
(2) Their one-half interest
 in the 300 shares omitted
 from their mother's
 succession -------------- 150 shares
(3) For the return of excessive
 donations --------------- 100 shares
 ___
 Total ------------------- 605 shares.

Defendant, taking the position that what the two children by their suit are claiming is an accounting of the usufruct of their father on the property inherited from their mother, interposed the exception of ten years' liberative prescription provided by LSA-C.C. art. 3544 which reads as follows:
"In general, all personal actions, except those before enumerated, are prescribed by ten years."
Upon said exception being overruled, defendant filed a voluminous answer, the contents of which need not be recounted. After a trial on the merits, there was judgment (the nature of which will be hereafter set out) in favor of plaintiffs and against Mrs. Eunice Knobloch Heckert, individually, as well as testamentary executrix, and she has perfected this appeal.
Appellant in this court, as the sole ground for reversal of the judgment, relies on her exception of ten years' liberative prescription which she reurges.
We do not construe the suit to be one for an accounting. Plaintiffs are merely demanding their share of the capital stock of S. H. Kress and Company which they acquired as the sole heirs of their deceased mother and also for their legitime in their father's interest in the 300 shares remaining in his succession and also for a reduction of excessive donations inter vivos to the second wife so that their legitime may be reserved.
Upon deciding the case, the trial judge assigned comprehensive and well-considered reasons for judgment which encompass the factual situation and the applicable law, and since we are in accord therewith, we quote and adopt as part of our opinion herein the following portion of said reasons:
"The questions presented by the present action are: What property rights do the petitioners have in the three stock certificates standing in the name of John Earl Heckert, two of which certificates (7154 and 7155) were included in the inventory of the succession of Mrs. Anna Buch Heckert, and one of which certificates (7158) was omitted from the first wife's succession? What property rights do petitioners have in the six certificates standing in the name of Eunice K. Heckert?
"A fundamental basis of respondent's defense to the present action is that the usufruct which the de cujus had in the stock certificates was imperfect and that, therefore, there was a ten year prescriptive period for an accounting, such prescription running from the termination of the usufruct. However, such contention is not tenable under the law and jurisprudence of this state. The usufruct of the de cujus over the heirs' one-half of the first wife's succession is founded upon Civil Code Art. 916:
"`In all cases, when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed *379 by last will and testament, of his or her share in the community property, the survivor shall hold a (in) usufruct, during his or her natural life, so much of the share of the deceased in such community property as may be inherited by such issue. This usufruct shall cease, however, whenever the survivor shall enter into a second marriage.'
"The two possible kinds of usufruct which the surviving spouse could have are explained in Civil Code Art. 534:
"`There are two kinds of usufruct:
"`Perfect Usufruct, which is of things which the usufructuary can enjoy without changing their substance, though their substance may be diminished or deteriorated naturally by time or by the use to which they are applied; as a house, a piece of land, furniture and other movable effects.
"`An imperfect or quasi usufruct, which is of things which would be useless to the usufructuary if he did not consume or expend them, or change the substance of them, as money, grain, liquors.'
"Since common stock in a corporation is not specifically mentioned in any of the Code articles dealing with usufructs, the controversy as to the type of usufruct must be settled by turning to jurisprudence and analysis of the facts.
"Civil Code Art. 534 indicates that if the usufructuary can enjoy the property to any extent without changing its substance, he has a perfect usufruct; and if the property would be totally useless unless consumed or expended, then the usufructuary has an imperfect usufruct. It is apparent to this Court that Mr. Heckert could have enjoyed the stocks to some extent without transferring or selling them, this by way of receiving the dividends. In Leury v. Mayer, 122 La. 486, 47 So. 839, the Court stated:
"`It is obvious that bank stock does not fall within the purview of Article 534, Rev.Civ.Code, but represents an investment of money for the purpose of producing revenue. In such a case, the usufructuary is entitled only to the fruits, as in the case of "rents of real property, the interest of money, and annuities." Articles 544, 545. The argument that in the case at bar the usufructuary had the right to sell the stock because it was not producing a revenue is not only unsound in law, but unsupported by the facts of the case. * * *'
"Respondent insists that the legislation dealing with transfer of stock, R.S. 12:501, et seq. (Act 215 of 1912), has nullified the holding of the Leury Case, supra. R.S. 12:501 provides:
"`* * * the person, firm or corporation, in whose name a certificate of stock stands, or to whom a certificate of stock is endorsed, whether in full or in blank and who has possession of said certificate shall be regarded as the legal owner thereof with full power to pledge, sell or otherwise dispose of said stock, and no person, corporation, firm nor transfer agent shall be responsible to any one claiming any interest in, or ownership of, said stock, or any part thereof, by virtue of any undisclosed or latent legal or conventional title or interest therein.'
"However, in the title of Act 215 of 1912 is found the following explanation of the purpose of the legislation:
"`To protect corporations, persons, firms and transfer agents, dealing in or transferring stocks where the transferor has the possession of the stock transferred, and where the stock stands in the name of the person, *380 corporation, or firm transferring it, or is endorsed over to said person, corporation or firm in full or in blank.'
"Thus, the Act was meant as a protective device for the benefit not of the transferor, but of the transferee. In other words, the transferee would be protected from actions on stocks where, on the face of the certificates or from the circumstances of the transaction, there is nothing to give the transferee notice of any latent defects in the transferor's title. Now, the answer to the question of whether this act broadens the powers or rights of the transferor, whatever might be his capacity or position, is answered by R.S. 12:525 (Act 180 of 1910, Sec. 2):
"`Nothing in this Act shall be construed as enlarging the powers of an infant or other person lacking full legal capacity, or of a trustee, executor or administrator, or other fiduciary, to make a valid endorsement, assignment or power of attorney.'
"Therefore, the holder of a perfect usufruct on common stocks in a corporation cannot, by the above mentioned acts, sell or transfer the interests or property rights of the naked owners. The above acts merely state that if the usufructuary does transfer the stocks without the permission of the naked owners, and the stocks stand in the name of the usufructuary, then the corporation is not liable to the naked owners for transferring the stocks. But, the usufructuary must still answer to the naked owners for the breach of fiduciary obligation. The holding of the Leury Case, supra, still stands as good law; Mr. Heckert's cancellations of the stocks representing the interests of the present petitioners was, therefore, a breach of his fiduciary obligation to the naked owners.
* * * * * *
"Respondent has sought to apply the ten year prescription of Civil Code Article 3544 to petitioners' rights. However, the cases cited by respondent on this point all relate to the seeking of an accounting under an imperfect usufruct. Cochran v. Violet, 38 La. Ann. 525; In re Jones, 41 La.Ann. 620, 6 So. 180; Burdin v. Burdin, 171 La. 7, 129 So. 651. In fact, as relates to the property which was subject to a perfect usufruct in Burdin v. Burdin, supra, the Court said:
"`* * * The only piece of real estate situated in Louisiana, in which the children of the deceased Mrs. Elizabeth Franz Burdin have an interest is a certain piece of swamp land in the Parish of Iberville, which apparently was not inventoried in Mrs. Burdin's succession. Plaintiff does not allege that the defendant has denied her proportionate interest in this particular land, which she is at liberty at any time to assert and liquidate by the proper proceeding.'
"This quotation is cited to show that even though prescription may run on the right to an accounting under an imperfect usufruct, it cannot run as to rights of naked owners under a perfect usufruct. In an article by Leonard Oppenheim entitled The Usufruct of the Surviving Spouse, 18 Tulane Law Rev., the author states:
"`The usufructuary being a precarious possessor cannot prescribe against the naked owner, no matter how long he holds the things subject to the usufruct. * * *' p. 217.
"This follows the codal provision of Civil Code Article 3510:
"`Those who possess for others and not in their own name cannot prescribe, whatever may be the time of their possession. Thus, farmers, tenants, depositaries, usufructuaries, and all those generally who hold by a *381 precarious tenure and in the name of the owner cannot prescribe on the thing thus held.'
"The law, as indicated by the above article, is that there can be no acquisitive prescription applied to a usufruct. As relates to the facts in the present case, were this Court to say that since the petitioners did not assert their rights to the stocks within ten years after the termination of the usufruct, their rights have prescribed; we would actually be saying that there can be acquisitive prescription under a usufruct. Such holding would be directly contrary to the clear and express provision of Civil Code Art. 3510. Any contention that the usufructuary's transferring the stock and converting it to money transforms the usufruct to an imperfect one is met by the holding of the court in Wainer v. Wainer, 210 La. 324, 26 So.2d 829, where, in effect, the Court held that when stock has been converted to money by the usufructuary, the usufruct does not thereby become an imperfect usufruct.
"The stocks in the original succession were held in indivision after the termination of the usufruct of Mr. Heckert. Planiol, in Traite Elementaire De Droit Civil, Vol. 1, part 2, No. 2497, says:
"`A thing belonging to several co-owners in indivision when the right of each owner bears upon the whole (and not upon a given part) of the thing held in common. The share of each, therefore, is not a tangible share but a portion expressed by a fraction: a third, a fourth, a tenth. It is the right of ownership that is divided among them. The thing is not. It is held in indivision. The right of each co-owner must be pictured as striking every molecule of the thing and as there encountering the right of the other co-owners for the portions belonging to them.'
"The application of this principle leads to the conclusion that petitioners did not merely own a certain number of shares in the stock of S. H. Kress and Co., but actually owned one-half of each of the certificates, each representing a certain number of shares. Thus, when Mr. Heckert sold or otherwise transferred a certificate, he was transferring a piece of property, half ownership of which was vested in petitioners.
"Based on this analysis the Court will determine petitioners' recovery as follows: From the original succession of Mrs. Anna Buch Heckert, petitioners received ownership of 505 shares of Kress stock, represented by the certificates in the inventory, and also the certificates numbered 7156, 7157 and 7158 which were inadvertently omitted from the inventory of that succession. In Mr. Heckert's succession there are only three certificates from that original succession still extant, these being numbered 7154, 7155 and 7158, representing in toto 300 shares. Since petitioners are due 505 shares, the Court must award them full ownership of the three extant shares in Mr. Heckert's succession. This leaves petitioners 205 shares short. Certificate number H-9983, Mrs. Heckert for 100 shares is dated December 17, 1942, the same date that certificate number 7153 was cancelled; therefore, the transaction would amount to an invalid donation of 50 shares belonging to petitioners, which shares must be returned to petitioners. Certificates numbered F-19232, F-19233, F-19234, and F-19235 are dated July 17, 1944, the same date that certificates numbered 9178 and 8438 were cancelled; therefore, this transaction would amount to an invalid donation of 100 shares belonging to the petitioners, which shares must be returned to petitioners. Since the donations to respondent were valid as to Mr. Heckert's one-half interest at the time they were made, this Court *382 will only require that the number of shares, or their value, as pertains to petitioners' one-half interest be returned to petitioners. This leaves the petitioners 55 shares short, for which the Court will award a judgment in favor of petitioners and against respondent in her capacity as testamentary executrix of the Succession of John E. Heckert in the sum of $1,100.00, being the value of 55 shares on the date of death of Mrs. Anna Buch Heckert, said sum to be chargeable as a debt of decedent's separate estate or chargeable to his one-half of the community.
"Petitioners also have certain interests in the present succession which must be determined and computed by the Court. Since it has been determined that the 300 shares in the succession of Mr. Heckert must be given in full ownership to the petitioners, there are, in reality, now no shares in Mr. Heckert's succession. So, the Court must determine the reductions of the donations made to respondent by Mr. Heckert. Fictitiously returning the donations to respondent, Mr. Heckert's estate would now contain 200 shares of S. H. Kress and Company stock. This amount is derived from Mr. Heckert's ownership of certificate number 1293 (100 shares, community property of the second marriage), and his one-half ownership of certificates numbered 7153 (100 shares; ½ equals 50 shares), 9178 (100 shares; ½ equals 50 shares), and 8438 (100 shares; ½ equals 50 shares). Thus, the forced portion due and owing to petitioners under Civil Code Article 1493 would be as follows: one-fourth of the shares represented by certificate No. H-1529 (100 shares; ¼ equals 25 shares), donated to respondent on July 29, 1940; one-half of Mr. Heckert's one-half of shares represented by certificate number H-9983 (100 shares; ¼ equals 25 shares), donated to respondent on December 17, 1942; and one-half of Mr. Heckert's one-half of shares represented by certificates numbered F-19232 (50 shares), F-19233 (50 shares), F-19234 (50 shares), and F-19235 (50 shares) (¼ of 200 shares equals 50 shares). The above donations must, therefore, be reduced by 100 shares.
"The Court will make the following awards to petitioners: (1) Full ownership of S. H. Kress and Company certificates numbered 7154, 7155, and 7158; and S. H. Kress and Company is hereby ordered to make the change on the corporate records accordingly; petitioners either to make division of shares between them or have them cancelled and divide the funds; (2) 150 shares of S. H. Kress and Company stock, or their monetary value based on the valuation of $20.00 per share at the time of the succession of Anna Buch Heckert, to be given or paid by respondent in this case; this being a return of the invalid donations of petitioners' interests by Mr. Heckert to respondent; (3) Judgment for $1100.00 against respondent as executrix for the value of 55 shares of S. H. Kress and Company stock at $20.00 per share; (4) 100 shares of S. H. Kress and Company stock or their monetary value based on the valuation of $22.63 per share (see stipulation in record of testimony, p. 13) at the time of Mr. Heckert's death, to be given or paid by respondent in this case; this being a reduction of excessive donations made by Mr. Heckert to respondent, which donations impinge on the petitioners' forced portion of their father's succession.
"There will be judgment accordingly."
The codal law is plain that donations inter vivos by one spouse to the other cannot exceed one-half of the property of the disposer if he leaves at his decease two children. LSA-C.C. art. 1493. In the case of an excessive donation where there is *383 not sufficient property left in the succession to satisfy the children's legitime, in whole or in part, the donee is required to supply the deficiency out of the things donated. Succession of Desina, 123 La. 468, 49 So. 23.
Appellant expresses disappointment that the trial judge failed to notice and discuss several decisions cited below, viz., Miguez v. Delcambre, 125 La. 176, 51 So. 108; Succession of Block, 137 La. 302, 68 So. 618; Vivian State Bank v. Thomason-Lewis Lumber Co., 162 La. 660, 111 So. 51; and Johnson v. Bolt, La.App., 146 So. 375, relied on by counsel to support their contention that negotiable promissory notes or negotiable bonds may be the subject of an imperfect usufruct. The argument then follows that a certificate for corporate stock by endorsement of the owner passes from hand to hand with the easy facility of currency, negotiable promissory notes or bonds and is the subject of an imperfect usufruct.
There can be no imperfect or quasi-usufruct of shares of the capital stock of a corporation as the same cannot in any wise be likened to "money, grain, liquors" mentioned in the second paragraph of LSA-C.C. art. 534. Stock certificates are entirely dissimilar to negotiable promissory notes. A promissory note is an evidence of an indebtedness and is merely a facility to a creditor in proving the fact of the obligation. Lerner v. Bischoff, La.App., 193 So. 236; Oak Appliance Co. v. Clayton, La. App., 1 So.2d 157. Bills of exchange and promissory notes are representatives of money circulating in the commercial world as evidence of money. Shaw v. Merchants' Bank of St. Louis, 101 U.S. 557, 25 L.Ed. 892.
In Miguez v. Delcambre, supra, our Supreme Court said:
"Peculiar qualities are attributed by the law merchant to negotiable promissory notes in order that they may circulate as money, the main difference between the notes of the government, or of the national banks and those of individuals lying in the fact that the former are usually better secured. * * *"
On the other hand, shares of stock in a corporation represent not money but a proportionate interest in the rights and property of the corporation, whatever they may be and wherever they are, subject to the corporation's obligations. The State of Louisiana v. The North Louisiana & Texas Railroad Company, 34 La.Ann. 947; Parker, Tax Collector v. Sun Ins. Co., 42 La. Ann. 1172, 8 So. 618.
The judgment appealed from does substantial justice, and, therefore,
It is affirmed.
Affirmed.