COVINGTON, Judge.
This is a suit for a money judgment by Carr Oil Company, Inc., based on the furnishing of petroleum- products to Donald G. Lambert Contractor, Inc., (Lambert Contractor), who had contracted with the State of Louisiana for the repair by asphalt overlay of Louisiana State Highway No. 317 (referred to as the Burns Point job), in St. Mary Parish, Louisiana. The contractor was bonded by Maryland Casualty Company, pursuant to the Louisiana Public Works Act, LSA-R.S. 38:2181, 2241 et seq.
The plaintiff claims $26,031.72 with legal interest, costs and attorney’s fees at 10% of the principal amount, alleging the liability of the contractor, the surety and the State. It appears that the contractor was adjudicated bankrupt, and the proceedings were pursued only against the surety and the State.
After trial on the merits, the lower court rendered judgment in favor of Carr against Maryland Casualty and the State for the full amount of the plaintiff’s claim of $26,-031.72; and, because the judgment was for the full amount of the claim, the plaintiff was also awarded 10% as attorney’s fees in accordance with LSA-R.S. 38:2246. The defendants have appealed. We affirm.
The jurisprudence is settled that for a claimant to hold the contractor, or surety, liable under LSA-R.S. 38:2241 et seq., he must prove that there was a privity of contract, or that he furnished labor or materials to the contractor or a subcontractor. Harvey Canal Towing Co., Inc. v. Gulf South Dredging Co., Inc., 345 So.2d 567 (La.App. 4 Cir. 1977); Richard and Gaudet v. Housing Authority of City of Lafayette, 323 So.2d 168 (La.App. 3 Cir. 1975), writ denied, 326 So.2d 337 (La.1976).
Carr contracted directly with the contractor (Lambert Contractor) on the construction project. We reach this conclusion, as did the trial court, after reviewing the evidence presented.
Tom C. Carr, president of- the plaintiff corporation, testified that he personally went to the job site to get the business of supplying petroleum products to the contractor. Mr. Carr discussed the business with Louis Barrett, who was in charge of the construction work for the contractor, and they entered into a verbal agreement under which Carr was to supply certain petroleum products, primarily diesel fuel, to the contractor. Under the agreement the contractor was to telephone in orders to Carr; and the supplies were to be delivered to the job site, at which time a written purchase order was to be given to Carr. In due course Carr was to send invoices to the contractor, which were then to be paid by the contractor. Subsequently, Carr’s delivery personnel returned with purchase orders bearing the heading of Lambert Industries, Inc. Upon Mr. Carr’s inquiry of Mr. Barrett, he was advised that Lambert Industries paid the bills for the contractor, and that all invoices should be sent to Lambert Industries. It was, however, confirmed that Carr’s contract was with Donald G. Lambert Contractor, Inc. Mr. Carr returned to his office, and so instructed his office personnel. The other witnesses and the business records corroborate the testimony of Mr. Carr. Nolan Louviere, Carr’s employee in charge of dispatching orders (receiving purchase orders and checking invoices), testified that Mr. Carr instructed him to send the bills to Lambert Industries and he carried out Mr. Carr’s instruction. Elizabeth B. Carr, bookkeeper for Carr, testified that her instructions were to send the invoices to Lambert Industries. The business records in evidence show that there was no consistency in the way the Lambert companies handled the purchase orders, invoices and other business records; for example, a purchase order issued by Donald G. Lambert Contractor, Inc. might be paid by *159 Lambert Industries, Inc.; employees who signed purchase orders might use order forms of either Lambert company without regard to which one was their employer; job numbers of one company might appear on purchase orders of the other company.
In opposition to the claim of Carr, the defendants offered only the testimony (by deposition) of Clegg Strong, trustee in bankruptcy for the contractor, and Jack O’Malley, a former supervisor for the contractor. Mr. Strong stated that the business records of the two Lambert companies were mixed up and he was unable to determine which corporation was in possession of the records produced by the defendants. He knew nothing of the operations of the corporations prior to bankruptcy. Mr. O’Malley testified that the two Lambert companies had the same management, and that Louis Barrett was an employee only of the contractor.
Having established privity of contract, the plaintiff Carr is entitled to recover on his claim against the surety, Maryland Casualty. See Harvey Canal Towing Co., Inc. v. Gulf South Dredging Co., Inc., supra.
The evidence will not support the appellants’ contention that Carr was a material-man who supplied Lambert Industries who in turn supplied Lambert Contractor. The evidence clearly establishes that Carr contracted directly with Donald G. Lambert Contractor, Inc., the primary contractor on this public works contract, and that Maryland Casualty contracted with the contractor to be its surety on the contractor’s bond. There is no evidence that the contractor enlarged the bond in any way. The bond in question is purely statutory in the instant case. We find that the trial court properly fixed liability thereon by the bond’s provisions, construed with reference to the statute. See Louisiana Highway Commission v. McCain, 197 La. 359, 1 So.2d 545 (1941); Miller v. Bonner, 163 La. 332, 111 So. 776 (1927).
In view of the establishment of a contract between the materialman, Carr, and the contractor, Lambert Contractor, the rule that a materialman of a materialman cannot recover under the Public Works Act, Thurman v. Star Electric Supply, Inc., 307 So.2d 283 (La.1975), is inapplicable.
Moreover, the record reveals that Lambert Industries, Inc., also a bankrupt, possessed no truly separate identity from Donald G. Lambert Contractor, Inc., except that it was separately incorporated under Louisiana corporation law. Both corporations had offices in the 1800 block of Duncan Street in Kenner; business records of one was often in the office of the other; the plaintiff’s notice of the filing of its claim in the office of the Recorder of Mortgages, sent by certified mail, return receipt, was mailed to both corporations at the same address, 1800 Duncan Street, were received, and the return receipts bear the signature of the same person. It had the same managerial officers as Lambert Contractor. The directorate was identical, except for one officer. The agents for service of process were the same. Donald G. Lambert owned 98 out of 100 shares of stock outstanding in each corporation. The two corporations worked closely together in construction and construction materials work. On the Burns Point job both companies used land leased in the name of Lambert Industries.
In David Moore Development Company v. Higgins Industries, Inc., 163 So.2d 139 (La.App. 4 Cir. 1964), writ denied, 246 La. 580, 165 So.2d 481 (1964), the Court said:
“The jurisprudence of this state is well settled to the effect that a captive corporation cannot be used as a screen or shield behind which one may hide his true interest in a transaction.”
The next determination which this Court is called upon to make is whether or not Carr delivered the petroleum products to the contractor. Uncontradicted testimony presented by the plaintiff shows that the products were dispatched by Carr and delivered to the contractor as shown by purchase orders. A preponderance of the evidence shows that the contractor’s road equipment used on the project actually used both gasoline and diesel fuel from the fuel storage tanks, which were furnished by Carr under its agreement with the contractor, and *160 which were placed some 450 feet from the roadway on a tract of land leased in the name of Lambert Industries. On this question, the trial court found that “delivery of the materials and supplies to the two storage tanks was delivery to the job site as contemplated by the jurisprudence interpreting the statute in question.”
This jurisprudence is to the effect that where the materialman establishes delivery of materials to the job site for the construction project, he has established his right to recover the value of such materials. Levingston Supply Company, Inc. v. D & M Mechanical Contractors, Inc., 211 So.2d 414 (La.App. 1 Cir. 1968).
In Levingston Supply Company, Inc. v. Great American Insurance Company, 225 So.2d 715 (La.App. 1 Cir. 1969), the Court found that the plaintiff (a supplier of certain plumbing materials) had traced the material from its reception by the representative of the subcontractor of the general contractor to the job site. The Court then said:
“We adhere to the pronouncement in Levingston Supply Company, Inc. v. Aetna Casualty and Surety Company (1960) La.App., 124 So.2d 357, that the furnisher of materials who establishes delivery of these materials on a job site has met all requirements of the statute [LSA-R.S. 38:2246] for recovery.”
In Levingston Supply Company v. Aetna Insurance Company, 124 So.2d 357 (La.App. 1 Cir. 1960), the Court stated:
“In our opinion it appears that the law is now well settled that a materialman who timely files a lien for materials furnished to a subcontractor is entitled to recover from the surety upon proof of actual delivery of the materials to the site and he is not required to additionally prove that the materials were, in fact, incorporated or used in the building.”
The case of Slagle-Johnson Lumber Company, Inc. v. Landis Construction Company, Inc., 379 So.2d 479 (La.1979), is factually distinguishable. That case involved lumber and nails used to construct wooden forms for pouring of concrete; they were not only not incorporated into the finished job, but lumber so used can, and usually is, reclaimed and used several times at different jobs. Some of the products involved in the instant case were also not the type of materials that were intended to be incorporated into the job; however, they were primarily petroleum products which were shown to have been furnished for use in machines used on the project. The defense in no way overcame the presumption flowing from delivery, while the defense in the Slagle-Johnson case did.
The plaintiff also seeks attorney’s fees as provided in LSA-R.S. 38:2246. When the full amount of the claim is recov-. ered, and amicable demand for payment of that amount has been made upon the principal and surety and payment is not made within 30 days of that demand, the judgment must allow 10 percent on the amount recovered as attorney’s fees. Normand Company, Inc. v. Abraham, 176 So.2d 178 (La.App. 4 Cir. 1965). The evidence shows that all requirements of the statute have been met, there was proper notice to the. defendants, the lien was timely filed followed by timely litigation and the full amount claimed has been awarded; consequently, the trial court properly allowed an award of attorney’s fees.
We also find, as did the trial court, that the State is solidarily liable with the defendant surety, Maryland Casualty Company, for two reasons: first, the project was started- more than 30 days before the recordation of the public works contract and. the bond; work was begun in June, 1975; the contract and bond were filed in the office of the Clerk of Court in St. Mary Parish on September 25,1975; but Carr had made its first delivery of petroleum products on July 16, 1975; all in violation of LSA-R.S. 38:2244; secondly, in violation of LSA-R.S. 38:2242, the balance of the proceeds owed under the public works contract was paid by the State notwithstanding the timely filing of the lien and notice by Carr. See Bogue-Chitto Gravel Co., Inc. v. Police Jury of Parish of Lafourche, 11 La.App. 246, 122 So. 505 (La.App. 1 Cir. 1929).
*161 For the reasons assigned, the judgment appealed is affirmed at the appellants’ costs.
AFFIRMED.