399 So.2d 1320 (1981)
VILLE PLATTE CONCRETE SERVICE, INC., Plaintiff-Appellee,
v.
WESTERN CASUALTY & SURETY COMPANY, et al., Defendants-Appellants.
No. 8253.
Court of Appeal of Louisiana, Third Circuit.
June 11, 1981.
*1321 Franklin, Moore & Walsh, Ray C. Dawson, Baton Rouge, for defendants-appellants.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before GUIDRY, FORET and CUTRER, JJ.
FORET, Judge.
Ville Platte Concrete Service, Inc. (Plaintiff) brought this action on open account to recover the sum of $7,934.75. Defendants are the Western Casualty & Surety Company (Western); the Evangeline Parish Police Jury (Police Jury); and B. J. Gauthier, Inc.
Western filed a third party demand against B. J. Gauthier, Inc., and Deborah Gauthier and B. J. Gauthier, individually, and named the Police Jury as an additional third party defendant by an amended third party petition. The Police Jury filed a peremptory exception to Western's third party demand pleading no cause and no right of action.
Plaintiff's action proceeded to trial where the trial court rendered judgment in its favor and against Western in the principal action.[1] The trial court also dismissed plaintiff's suit against the Police Jury.
Western appeals and presents four issues:
(1) Whether a contract existed between plaintiff and Western for sales on open account;
(2) Whether plaintiff can recover from Western under the "Public Contracts Law" (LSA-R.S. 38:2181 et seq.);
(3) If so, has plaintiff proved its claim against Western, and if so, are the items claimed recoverable under the "Public Contracts Law";
(4) Whether plaintiff may recover attorney's fees.
*1322 Plaintiff has answered the appeal seeking an increase in the amount awarded as attorney's fees and damages for frivolous appeal.

FACTS
B.J. Gauthier, Inc. (the general contractor) undertook the construction of the new Evangeline Parish Courthouse (the Courthouse) located in Ville Platte, Louisiana. Plaintiff is in the business of furnishing concrete and other building materials, together with labor and equipment.
Western was the surety on the performance bond executed by the general contractor in favor of the Police Jury. Eventually, financial problems experienced by the general contractor became so severe that Western had to be called in to complete the courthouse project. Plaintiff became aware of the fact that Western was assisting the general contractor when Western began to pay its bills. This had begun as early as May 23, 1977, when Western paid plaintiff $1,210.56. Western also paid plaintiff a total of $27,616.28 between November 29, 1977 and February 16, 1978 for labor, equipment and materials furnished to the general contractor. Thereafter, plaintiff furnished additional labor, materials and equipment to the general contractor, which was billed $7,934.75.
Western refused to pay these amounts and plaintiff filed two labor and materialman's liens upon the courthouse and parking lot. Plaintiff instituted this action on January 1, 1979, to have those liens recognized and to recover from defendants, in solido, the sum of $7,934.75, which it claimed it had sold to defendants on open account. Plaintiff also sought attorney's fees.
Western failed to answer the petition, and plaintiff entered a default judgment against it on February 28, 1979. The preliminary default was confirmed and judgment was rendered in favor of plaintiff and against Western on March 5, 1979. Western was granted a suspensive appeal, and this Court reversed the trial court's decision in Ville Platte Concrete Service, Inc. v. Western Casualty and Surety Company, 377 So.2d 532 (La.App. 3 Cir. 1979). There, we found that plaintiff had failed to prove a prima facie case of Western's indebtedness to it and remanded the matter so that more evidence could be adduced.
Meanwhile, Western filed an answer containing a third party demand and named B. J. Gauthier, Deborah Gauthier and B. J. Gauthier, Inc., as third party defendants. Western alleged that third party defendants had executed an indemnity agreement in its favor and that these third party defendants were liable for any judgment rendered against it.
Western filed an amended third party petition shortly thereafter in which it named the Police Jury as an additional third party defendant. Western here alleged that it had notified the Police Jury that it intended to pay the amount claimed by plaintiff provided the Police Jury or its architect would approve the concrete work. Western further alleged that neither the Police Jury nor its architect would approve of this work although they had used the parking lot for two years. Therefore, Western also sought to hold the Police Jury liable for any judgment which might be rendered against it.
The Police Jury filed a peremptory exception pleading no cause and no right of action to Western's third party demand and the exception was sustained by the trial court.
Plaintiff's action came up for hearing a second time on August 5, 1980, and the trial court again rendered judgment in favor of plaintiff and against Western in the sum of $7,934.75 on the principal action, together with $2,650.00 in attorney's fees. Western was granted a suspensive appeal from the judgment.

PLAINTIFF'S ALLEGED CONTRACT WITH WESTERN
Plaintiff alleges that Western orally contracted with it for sales on open account which totaled some $7,934.75. Western denies the existence of any contract, written or oral, between it and plaintiff.
*1323 A creditor suing on open account has the burden of proving that the defendant, alleged to be the debtor, contracted for the sales on open account. Ville Platte Concrete Service, Inc. v. Western Casualty and Surety Company, supra; Frank Brigtsen, Inc. v. Alpha Builders, Inc., 351 So.2d 777 (La.App. 4 Cir. 1977).
Further, LSA-C.C. Article 2277 provides:
"Art. 2277. Proof of agreements concerning movables or money
Art. 2277. All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
A plaintiff may satisfy the requirement of one credible witness, and the phrase "other corroborating circumstances" in LSA-C.C. Article 2277 means general corroboration. Independent proof of every detail of the witness's testimony is not required. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977); Ville Platte Concrete Service, Inc. v. Western Casualty and Surety Company, supra; Ethridge v. Merchants Trust and Savings Bank, 389 So.2d 865 (La.App. 4 Cir. 1980).
E. J. Deville, plaintiff's president and general manager, testified on its behalf. Deville stated that there was an oral agreement between plaintiff and the general contractor under which plaintiff agreed to furnish the labor, materials and equipment necessary for the construction of the parking lot of the courthouse. Deville testified that it was himself, on behalf of plaintiff, and B. J. Gauthier, the general contractor, who entered into this agreement. The invoices introduced into evidence by plaintiff show that the various items and amounts furnished by plaintiff were sold to the general contractor. The invoices also show that the items sold were received by Mike Mehuron, the construction superintendent for the general contractor.
Dempsey Bailey, office manager for Romine and Associates, Inc., testified that Western was one of his firm's customers. He stated that Western had sent him to the construction site when it began to assist the general contractor financially. He testified that it was his job to make sure that the bills paid by Western were for work that had been done properly. He was also to assist the employees of the general contractor in completing the project. Bailey testified that Mike Mehuron was never an employee of Western, although Western had paid his salary on behalf of the general contractor.
Plaintiff argues that Deville testified unequivocally that Western contracted with plaintiff to furnish the necessary materials, labor and equipment for the construction of the parking lot. Deville did testify that Western had "retained" plaintiff to do the work and that Dempsey Bailey had "authorized" this work. However, this was contradicted by the other testimony given by Deville which we noted above. Further, Deville stated that he wasn't sure whether some of the items on the invoices had been requested by Bailey, and he was unable to testify as to any certain point in time when Western took over the project. Deville did testify that B. J. Gauthier remained in control of the project for some time after Western began paying the general contractor's bills. Deville's contradictory testimony is the only evidence in the record which indicates the existence of a contract between plaintiff and Western. There is no corroborating evidence.
We find that plaintiff failed to prove the existence of any contract between it and Western for sales on open account and therefore, plaintiff has no cause of action in open accounts.[2] However, pursuant to the *1324 provisions of LSA-C.C.P. Article 2164[3], we also find that plaintiff has proven the existence of an oral contract between it and the general contractor.

APPLICABILITY OF "PUBLIC CONTRACTS LAW"
Defendant argues that the "Public Contracts Law" is applicable to the issues regarding plaintiff's recovery in this action.
LSA-R.S. 38:2216(A)[4] provides that:
"§ 2216. Written contract and bond
A. When any bid is accepted for the construction or doing of any public works, a written contract shall be entered into by the successful bidder and the public entity letting the contract, and the party to whom the contract is awarded shall furnish good and solvent bond in an amount not less than one-half of the amount of the contract, for the faithful performance of his duties."
LSA-R.S. 38:2241(A) provides that:
"§ 2241. Written contract and bond
A. Whenever the state or any state board or agency or any political subdivision of the state enters into a contract in excess of one thousand dollars for the construction, alteration, or repair of any public works, the official representative of the governing authority shall reduce the contract to writing and have it signed by the parties. He shall require of the contractor a bond with good, solvent, and sufficient surety in a sum not less than fifty percent of the contract price for the faithful performance of the contract with an additional obligation for the payment by the contractor or subcontractor for all work done, labor performed, or material or supplies furnished for the construction, alteration, or repair of any public works, or for transportation and delivery of such materials or supplies to the site of the job by a for hire carrier, or for furnishing materials or supplies for use in machines used in the construction, alteration, or repair of any public works. No modification, omissions, additions in or to the terms of the contract, in the plans or specifications or in the manner and mode of payment shall in any manner affect the obligation of the surety. The bond shall be executed by the contractor with surety or sureties approved by the officials representing the state, state board or agency, or political subdivision and shall be recorded with the contract in the office of the recorder of mortgages in the parish where the work is to be done not later than thirty days after the work has begun."
There can be no doubt that the construction of the Evangeline Parish courthouse is a public work or that the contract between the general contractor and the Police Jury involved amounts in excess of $1,000.00. Therefore, the "Public Contracts Law" governs that contract and the performance bond executed by the general contractor with Western named as the surety thereto.

EXTENT OF PLAINTIFF'S RECOVERY UNDER THE "PUBLIC CONTRACTS LAW"
The jurisprudence is settled that for a claimant to hold the contractor, or surety, liable under LSA-R.S. 38:2241 et seq., he must prove that there was a privity of contract, or that he furnished labor or materials to the contractor or a subcontractor. Harvey Canal Towing Company, Inc. v. Gulf South dredging Company, Inc., 345 So.2d 567 (La.App. 4 Cir. 1977); Richard and Gaudet v. Housing Authority of City of Lafayette, 323 So.2d 168 (La.App. 3 Cir. 1975), writ denied, 326 So.2d 337 (La.1976); Moore v. Coastal Contractors, Inc., 188 *1325 So.2d 467 (La.App. 3 Cir. 1966); Carr Oil Company, Inc. v. Donald G. Lambert Contractor, Inc., 380 So.2d 157 (La.App. 1 Cir. 1979), writ denied, 383 So.2d 24 (La.1980).
We have found that plaintiff proved the existence of an oral contract between it and the general contractor. However, defendant argues that plaintiff has failed to prove that some of the items, for which it seeks recovery, were actually sold to the general contractor. It is defendant's contention that Mike Mehuron (the general contractor's construction superintendent) had personally obtained a contract to do some work on the project and that plaintiff cannot distinguish between those items sold to Mehuron in that capacity from those sold to the general contractor.
E. J. Deville testified that Mehuron was billed separately for the items he purchased and that the invoices introduced by plaintiff were for items sold to the general contractor. Each of these invoices specifically states that the items thereon were sold to B. J. Gauthier, Inc., the general contractor. Further, Deville testified that he was actually at the construction site when most of the items were delivered.
Dempsey Bailey testified that he could find no fault with any of the invoices introduced by plaintiff, except for the last one dated March 31, 1978, as he was no longer defendant's representative at that time. Bailey also testified that the reason defendant quit paying plaintiff and others was that defendant had paid out over $200,000.00 on the project without receiving any payments under the general contractor's contract with the Police Jury. Bailey stated that Western's counsel advised that course of action.[5]
Finally, we note that in the amended third party petition filed by Western, it admits that it agreed to pay plaintiff's claim provided the Police Jury or its architect approved the concrete work.
We hold that the record establishes that the trial court's finding that plaintiff provided $7,934.75 worth of labor, materials, and equipment to the general contractor for use in constructing the courthouse's parking lot is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Defendant also argues that some of the items listed on the invoices are for equipment rental and therefore, plaintiff cannot recover for these under the "Public Contracts Law".
It is well settled that unless the items which compose the plaintiff's claim form a component part of the completed structure or are consumed in the work, they are not lienable nor are they covered by the contractor's bond given under the provisions of LSA-R.S. 38:2241[6]. Further, it has been held under this rule that an amount claimed for rental of equipment is not covered by a bond given in accordance with LSA-R.S. 38:2241. Martinolich v. Albert, 143 So.2d 745 (La.App. 1 Cir. 1962); Mayeaux v. Lamco, Inc., 180 So.2d 425 (La. App. 1 Cir. 1965); Patent Scaffolding Company, Inc. v. Ross Corporation, 172 So.2d 364 (La.App. 4 Cir. 1965); Louisiana Highway Commission v. McCain, 197 La. 359, 1 So.2d 545 (1941).
The invoices introduced into evidence by plaintiff clearly show that some of *1326 the items listed thereon are for equipment rental[7]. We find that plaintiff's claim must be reduced by $1,093.00, which is the amount charged for equipment rental. Therefore, we award plaintiff $6,841.75 for work done, labor performed, and materials supplied under its oral contract with the general contractor.

ATTORNEY'S FEES AND FRIVOLOUS APPEAL
The trial court awarded plaintiff $2,650.00 in attorney's fees. Plaintiff has answered the appeal and seeks an increase in that amount.
LSA-R.S. 38:2246 provides:
"§ 2246. Attorney's fees
After amicable demand for payment has been made on the principal and surety and thirty days has elapsed without payment being made, any claimant recovering the full amount of his recorded or sworn claim whether by concursus proceeding or separate suit, shall be allowed ten percent attorney's fees which shall be taxed in the judgment on the amount recovered."
It is well established in our jurisprudence that where any claimant recovers the full amount of his recorded or sworn claim under LSA-R.S. 38:2246, he is entitled to attorney's fees as penalties, but where the claim is debatable and, as in this case, not fully recoverable, the attorney's fees may not be imposed upon the other party. R. J. Ducote Contractors, Inc. v. L. H. Bossier, Inc., 192 So.2d 179 (La.App. 1 Cir. 1966); Louisiana Highway Commission v. McCain, supra; Normand Company, Inc. v. Abraham, 176 So.2d 178 (La.App. 4 Cir. 1965); Long Bell Lumber Company v. S. D. Carr Construction Company, supra; Goldberg v. Banta Brothers, 183 La. 10, 162 So. 786 (1935).
We also deny plaintiff's claim for frivolous appeal.
For the above and foregoing reasons, the trial court judgment is affirmed in part and amended in part to reduce the amount awarded plaintiff from $7,934.75 to $6,841.75, and to deny attorney's fees to plaintiff.
Costs of this appeal are assessed three-fourths (¾) to Western Casualty & Surety Company and one-fourth (¼) to Ville Platte Concrete Service, Inc.
AFFIRMED IN PART, AMENDED IN PART.
NOTES
[1] No judgment was rendered by the trial court with respect to B.J. Gauthier, Inc., B.J. Gauthier, or Deborah Gauthier as it was impossible to make service of process on these defendants and third party defendants.
[2] The trial court made no specific finding with respect to the existence of a contract of sale on open account between plaintiff and Western. We note that, had the trial court made such a finding, our review of the record establishes that it would have been clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
[3] "Art. 2164. Scope of appeal and action to be taken; costs

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."
[4] The source provision of LSA-R.S. 38:2216(A) is the former LSA-R.S. 38:2213. There is no substantive difference between the two provisions.
[5] The controversy between Western and the Police Jury is now being thrashed out in Federal Court in Opelousas, Louisiana.
[6] We note that in Slagle-Johnson Lumber Company, Inc. v. Landis Construction Co., Inc., 379 So.2d 479 (La.1980), the Louisiana Supreme Court overruled H. R. Hayes Lumber Co. v. McConnell, 176 La. 431, 146 So. 14 (1932) and held that the "Public Works Act" clearly provided a privilege to all materialmen who furnish materials consumed in the construction of public works, regardless of whether the materials are physically incorporated in the permanent construction. We also note that in Construction Materials, Inc. v. American Fidelity Fire Insurance Co., 388 So.2d 365 (La.1980), the Louisiana Supreme Court overruled Long Bell Lumber Co. v. S. D. Carr Construction Co., 172 La. 182, 133 So. 438 (La.1931) insofar as it conflicted with LSA-R.S. 38:2247 and held that the "Public Works Act" does not prohibit a contractor's surety from voluntarily contracting to pay the claims of unpaid workmen or suppliers who are otherwise unprotected by the act.
[7] Invoice # 6740 dated Feb. 27, 1978 shows that plaintiff charged the general contractor $220 for 8 hours rental of a backhoe and operator. Invoice # 6873 dated March 9, 1978 shows that plaintiff charged the general contractor $75 for 3 hours rental of a backhoe and operator. Finally, Invoice # 7062 dated March 31, 1978 shows that plaintiff charged the general contractor $600 for 24 hours rental of a backhoe and operator; $10 for use of a dump truck; $150 for 12 hours rental of a tractor and $38 sales tax on these items. These amounts total $1,093.00.