423 So.2d 83 (1982)
Dave L. PEARCE
v.
Louis B. ROGERS.
Dave L. PEARCE
v.
J. Huntington ODOM.
Nos. 82 CA 0181, 82 CA 0182.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
Joel B. Dickinson, Baton Rouge, for plaintiff-appellant Dave L. Pearce.
J. Huntington Odom, in pro per.
Donald R. Smith, Kim G. Mayhall, Baton Rouge, for defendant-appellee Louis B. Rogers.
*84 Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
In 1966, Riverside Plantations, Inc. negotiated a transfer of all its assets to Allied Chemical Corporation. Shareholders of Riverside were to receive one share of Allied stock for each share of Riverside stock. The terms of the transfer called for the Riverside stock to be delivered to J. Huntington Odom, secretary of Riverside, before the Allied stock would be delivered. Allied's certificate no. S30084 (for 288 shares) was issued in the name of Dave Pearce in anticipation of the surrender by Pearce of Riverside's certificate no. 139 (for 288 shares). Mr. Odom has possession of the Allied certificate and refuses to deliver it to Pearce until Riverside certificate no. 139 is surrendered.
On January 24, 1967, Dave Pearce filed suit against Louis B. Rogers, seeking to be declared owner of and seeking delivery of Riverside stock certificate no. 139, representing 288 shares of stock, which, though issued in Pearce's name, was in Rogers's possession.
On September 25, 1980, Pearce filed suit against Odom, seeking to be declared owner of and seeking delivery of Allied certificate no. S30084. Rogers intervened seeking to be declared owner of an undivided one-half interest in the Allied certificate and in other Allied stock issued in Pearce's name. Rogers also sought a partition of all shares found to be jointly owned. The trial court declared Rogers to be the owner of 180 shares. He ordered a partition of certificate S30084 (288 shares) with 180 shares going to Rogers and 108 shares going to Pearce.[1] Pearce appeals.

FACTS
Sometime prior to October, 1958, Dave Pearce was employed by Louis Rogers as a real estate salesman. During this time Pearce made two separate purchases of stock in Riverside Plantations, Inc. Riverside Plantations, Inc. was a corporation organized for the purpose of acquiring and developing two tracts of land located in Ascension and East Baton Rouge Parish known as Riverside Plantation and Southwood Plantation. Pearce and Rogers were among several investors who acquired an interest in Riverside. On April 18, 1958, Pearce was issued certificate no. 7 for 90 shares, and on June 27, 1958, he was issued certificate no. 47 for 270 shares. Pearce made both purchases with his own funds, and both certificates were issued in his name.
Rogers and Pearce entered into a partnership in October of 1958 for the purpose of operating a real estate agency under the name "Rogers, Pearce Realty." Mr. James W. Smith, the agency's bookkeeper, testified that on that date he began to maintain the records of the firm on a partnership basis. Also, a partnership bank account was opened. However, no written, formal agreement was ever executed. Mr. Smith testified that the partnership was a fiftyfifty partnership.
On March 27, 1959, a check for Two Thousand Eight Hundred Eighty and no/100 ($2,880.00) Dollars was drawn on the partnership account and signed by Pearce and Smith made payable to "Riverside Plantations, Inc." The check was issued in payment for 288 shares of stock in Riverside. On April 21, 1959, Odom issued Riverside's certificate no. 139 for 288 shares in Pearce's name.
On April 25, 1960, a check in the amount of One Thousand Three Hundred Sixtythree and 64/100 ($1,363.64) Dollars was drawn on the partnership account and signed by Pearce and Rogers. This check represented a loan to Riverside, for which Riverside gave to Pearce & Rogers a promissory note as evidence of its indebtedness. In April of 1961, Riverside issued its certificate *85 no. 212 for 136 shares of stock as payment of the note. This certificate was also issued in Pearce's name.
All of the certificates were in Pearce's possession except for certificate no. 139 which was kept in the office of Rogers, Pearce Realty and which has been in Rogers's possession since the dissolution of the partnership.
Pearce and Rogers were also investors in another corporation known as Southwoods, Inc. Southwoods, Inc. was a corporation organized to acquire and develop a tract of land in East Baton Rouge Parish in the area where South Sherwood Forest Boulevard is presently located. Though the names are similar, Southwoods, Inc. has no relationship to Southwood Plantation (one of the two tracts of land acquired by Riverside). Rogers was obligated to purchase 25% of Southwoods, Inc., and Pearce was obligated for 10%.
On June 16, 1959, payment became due on the mortgage securing the purchase of the property by Southwoods, Inc. Each investor was to make a payment in proportion to his ownership interest in Southwoods, Inc. Pearce was financially unable to pay his share. Rogers issued a personal check to Southwoods, Inc. for $8,984.50. As evidenced by a notation on the check, the total amount included $6,417.50 in payment of the amount due by Rogers, and $2,567.00, in payment of the amount due by Pearce.
The trial court found that, contrary to Pearce's testimony, in consideration for the amount paid by Rogers for Pearce's debt, Pearce orally agreed to transfer to Rogers an undivided one-half interest in all of the stock in Riverside Plantations, Inc., which stood in Pearce's name. This agreement was never reduced to writing. The Rogers, Pearce Realty partnership dissolved in early 1962. On February 28, 1962, Pearce authorized certificate no. 47 (purchased by Pearce before the partnership was formed), for 270 shares, to be cancelled. Pearce then authorized the reissuance of that certificate in the following denominations:
Certificate no. 221 for 212 shares issued to Louis B. Rogers, dated February 28, 1962;
Certificate no. 222 for 58 shares reissued to Dave Pearce, dated February 28, 1962.
The number of shares reissued to Rogers (212), though reissued from the certificate purchased by Pearce prior to the formation of the partnership, represents one-half of the number of shares purchased with partnership funds.
Shares Purchased with Partnership Funds

 Certificate no. 139 288 shares
 Certificate no. 212 136 shares
 __________
 Total 424 shares
 ½ of 424 = 212

This amount (212) is the one-half owned by Rogers as an equal partner of all assets acquired by the partnership. The amount was owed and paid and is not a subject of dispute in this litigation. Rogers now claims a one-half interest in the number of shares purchased by Pearce prior to the formation of the partnership pursuant to the oral agreement of June 16, 1959, by which Rogers paid Pearce's obligation to Southwoods, Inc. in return for one-half interest in all Riverside shares issued in Pearce's name. The amount of shares purchased by Pearce prior to the formation of the partnership is 360. Rogers claims 180 of them.
In 1966, Riverside transferred all of its assets to Allied Chemical Corporation. Riverside and Allied agreed that for each share of Riverside stock transferred to Allied by the owner, Allied would issue a share of its stock in exchange. Pearce returned to Odom all of the Riverside stock that remained in his name, except for certificate no. 139, representing 288 shares, which was in Rogers's possession. Pearce received Allied stock for the Riverside stock he returned. However, Allied's certificate no. S30084, representing 288 shares, issued in Pearce's name, which was prepared in anticipation of the return of Riverside certificate no. 139, representing 288 shares, has remained in the possession of Odom. Odom refuses to give to Pearce the Allied certificate until Pearce surrenders the Riverside certificate.
*86 On January 24, 1967, Pearce filed suit against Rogers for a declaratory judgment praying that he be found the owner of Riverside certificate no. 139 (representing 288 shares). Pearce testified that after this suit was filed he began to receive dividend checks from Allied for the 288 shares along with dividends for his other shares. He stated that he assumed the Riverside stock had been delivered by Rogers, and so he abandoned that suit. He further stated that it was only in September, 1980 that he was informed that Rogers had not surrendered certificate no. 139. On September 25, 1980, Pearce again filed suit for declaratory judgment naming Odom as defendant and seeking to be declared the owner of Allied certificate no. S30084 (representing 288 shares of Allied stock). Rogers intervened in this second suit on November 14, 1980. In 1981, Rogers filed an answer and reconventional demand and an amended and supplemental answer and reconventional demand in the first suit. Pearce answered the reconventional demands. The two cases were consolidated for trial on March 8, 1981.
The trial judge allowed Pearce credit for the 212 shares previously received by Rogers and held that Rogers was entitled to an additional 180 shares. He ordered a partition in kind of Allied certificate no. S30084. Of the 288 shares represented by that certificate, he found that 180 were to go to Rogers and 108 were to go to Pearce.
Pearce perfected this appeal and alleges four specifications of error.

SPECIFICATIONS OF ERROR
1. The trial court erred in overruling Pearce's plea of prescription against Rogers's claim.
2. The trial court erred in accepting Rogers's testimony that Pearce had orally promised to transfer to him one-half of all Riverside stock purchased by Pearce prior to entering the partnership agreement.
3. The trial court erred in holding that Rogers had met the requirements of Civil Code art. 2277 which provides that oral contracts or agreements above $500.00 in value must be proved by at least one credible witness, and other corroborating evidence.
4. The trial court overlooked La.R.S. 12:624 which was in effect at that time which provided the only method of transferring certificates of shares.
Specifications of error 2, 3, and 4 will be discussed first.

SPECIFICATIONS OF ERROR NOS. 2, 3, & 4
The trial judge found that Rogers had agreed to advance the sum of $2,567.00 on Pearce's behalf in payment of Pearce's obligation due to Southwoods, Inc. The judge further found that in return for this advance, Pearce orally agreed to transfer to Rogers an undivided one-half interest in all of the stock in Riverside Plantations, Inc., which stood in Pearce's name. This agreement was never reduced to writing.
Pearce argues that La.R.S. 12:624(A)[2] provided the only method of transferring certificates of shares of stock. The jurisprudence is clear, however, that the Uniform Stock Transfer Act, La.R.S. 12:601 et seq., is not the exclusive means of transferring or evidencing ownership of stock. Succession of Dunham, 408 So.2d *87 888 (La.1981); Richard v. Foods and Services, Inc., 162 So.2d 213 (La.App. 1st Cir. 1964), writ refused, 246 La. 347, 164 So.2d 351 (1964). Moreover, corporate stock is a movable and parol evidence may be admitted to establish a contract relative to it. McRoberts v. Hayes, 248 La. 676, 181 So.2d 390 (1965); Thomas v. Southdown Sugars, Inc., 95 So.2d 721 (La.App. Orl. Cir.1957), reversed on other grounds, 237 La. 245, 110 So.2d 738 (1959); La.Civ.Code art. 2277.
La.Civ.Code art. 2277 reads as follows:
Art. 2277. Proof of agreements concerning movables or money
"All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
It is well settled that a party in the litigation may serve as his own "credible witness" in fulfilling the requirements of this article. Ville Platte Concrete v. Western Cas. & Sur., 399 So.2d 1320 (La.App. 3d Cir.1981); O'Rourke v. Tracy, 375 So.2d 747 (La.App. 4th Cir.1979). As to the requirement of "other corroborating circumstances," only general corroboration is required. Independent proof of every detail of the agreement is not necessary. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977); Ville Platte Concrete v. Western Cas. & Sur., supra.
Undoubtedly, the trial judge accepted Rogers as a credible witness and believed his testimony that an oral agreement had been made, as opposed to the testimony of Pearce that no such agreement had been made.
The trial judge did not enumerate the factors he considered as "corroborating circumstances" to support Rogers's testimony. We can surmise, however, from the record that he considered the uncontradicted evidence and testimony that Rogers did pay out of his personal funds a debt owed by Pearce. The amount paid for Pearce was carefully noted on the check issued by Rogers. Mr. Smith testified that Rogers and Pearce seldom reduced their agreements to writing, so not entering into a written contract would not be unusual. Rogers knew that Pearce was low on personal funds. For him to agree to accept stock in lieu of payment in cash would be a logical decision. Also, Rogers retained actual physical possession of Riverside stock certificate no. 139.
The question of whether the evidence offered by the plaintiff corroborates his claim is a finding to be made by the trier of fact, and his decision is not subject to reversal unless it is clearly wrong. The reviewing court must give great weight to the factual conclusions of the trier of fact, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La. 1973); O'Rourke v. Tracy, supra.
The trial judge was satisfied with the sufficiency of the evidence establishing the agreement. We cannot say he was clearly wrong.

SPECIFICATION OF ERROR NO. 1
Pearce argues that Rogers's claim is a personal action which has prescribed by ten years.[3] What Rogers sought, however, was to be declared owner of an undivided onehalf interest in certain stock and to have Allied's stock certificate partitioned in kind to reflect his ownership interest. See Succession of Heckert, 160 So.2d 375 (La.App. 4th Cir.1964).
La.Civ.Code art. 1304 reads:

*88 "The action of partition can not be prescribed against, as long as the thing remains in common, and such community is acknowledged or proved.
Thus, though coheirs have enjoyed their hereditary effects in common for a hundred years and more, without making a division, any of them can, at any time, sue for a partition."
Once it was established that Rogers did own an undivided interest in the stock, Rogers had a right to partition that stock. Clearly, this right to claim a partition is imprescriptible. La.Civ.Code art. 1304.
For the above reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Allied certificate no. S30084 represents 288 shares. Rogers claims 180 shares which represents one-half of all shares owned by Pearce prior to the formation of the partnership (totalling 360). The trial judge awarded Rogers 180 shares from a partition of Allied certificate no. S30084. The remaining 108 shares of the certificate were awarded to Pearce.
[2] La.R.S. 12:624 was repealed by Section 6 of Acts 1978, No. 165. See now La.R.S. 10:8-309. La.R.S. 12:624(A) read as follows:

§ 624. How title to certificates and shares may be transferred
"A. Title to a certificate and to the shares represented thereby can be transferred only:
(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or
(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person."
[3] La.Civ.Code art. 3544 reads as follows:

Art. 3544. Personal actions, general rule
"In general, all personal actions, except those before enumerated, are prescribed by ten years."