626 So.2d 507 (1993)
Randy RICHARD, Plaintiff-Appellee,
v.
David COMEAUX, et al., Defendants-Appellants.
No. 93-171.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
Writ Denied January 28, 1994.
*508 Robert E. Fruge, Sunset, for Randy Richard.
George Stubbs Bourgeois Jr., Opelousas, for David Comeaux, et al.
Before STOKER, DOUCET and SAUNDERS, JJ.
SAUNDERS, Judge.
This dispute arose when neither party sought ownership of Late Night Bunny, a mare with a bad case of "parrot mouth," a degenerative equine disease marked by a pronounced overbite that leads to the horse's eventual inability to eat. Randy Richard, plaintiff-appellee herein, claims that he paid codefendant-appellant, David Comeaux, $1,800.00 for the quarterhorse upon the assurance that Comeaux would receive and forward registration papers from the American Quarter Horse Association (AQHA) within thirty (30) days. Comeaux admits plaintiff was assured that the horse could be registered, but argues that he made no representation that he (Comeaux) would personally have the horse registered.
*509 Richard paid Comeaux $1,800.00 for the horse on September 15, 1990. Plaintiff on several occasions made demand that the horse be registered. On July 17, 1991, plaintiff filed suit alleging breach of contract due to the long running unregistered status of the horse. Defendants excepted to any claims arising for redhibitory vices on the animal on grounds that plaintiff's claims had prescribed two months after the sale, LSA-C.C. art. 2535, and generally denied plaintiff's charges as to the breach of contract claims. The trial court issued reasons for judgment which granted defendants' peremptory exception as to the redhibitory vices, but nonetheless rescinded the sale after ruling in favor of plaintiff on the contract issue:
"The Plaintiff claims the Defendant sold him an unsound horse, based on the fact that the horse had a parrot mouth.
"The dispute boils down to an appraisal of the testimony of a veterinarian on behalf of the Plaintiff, and a `horse trader' on behalf of the Defendant.
"The Court, after hearing them both, has no problem in finding that the testimony of the veterinarian must and should prevail.
"Accordingly, the Court finds the Defendant sold to the Plaintiff an unsound horse; and, the Plaintiff is therefore entitled to the redhibition finding.
"However, the Plaintiff did not file within the two months, as required by Article 2535 R.C.C.; therefore, the action in redhibition is prescribed.
"However, the Plaintiff also filed for `Breach of Contract' on another ground. That is, that the Defendant was supposed to get the horse `registered'. At time of suit, the horse was `unregistered'; but, after suit was filed, the Defendant got busy and got the horse registered. The Bill of Sale is dated 9-15-90 (P-2). Suit was filed July 17, 1991. The Registration is dated March 3, 1992. (D-9).
"This case is strikingly similar to Fuselier 266 So.2nd 531 (cited by both attorneys) except that in Fuselier it finally turned out the horse couldn't be registered.
"The Plaintiff says registration was supposed to be forthcoming. The Defendant says there was no time set. Accordingly, even if we take the testimony of the Defendant, the Defendant would have a reasonable time. When the Defendant got busy and put his mind to it (after suit was filed, of course), it didn't take him long to accomplish this purpose. The Defendant was a `pro' and certainly could have gotten the horse registered sooner.
"The Court believes and finds the Defendant exceeded a reasonable time in registering the horse,even after suit was filed,and so breached the contract.
"The Court will give the Defendant the benefit of the doubt with respect to the animus of the Defendant and sets the Plaintiff's damages at the price of the horse, which is $1800.00, upon return of the horse.
"The Plaintiff spent money for upkeep, etc., but also got use and employment of the horse, which, in my opinion, offset any claim for damages."
Only defendants appealed the judgment of the trial court. Ordinarily this court will only review issues submitted to the trial court and assigned as errors on appeal. Rule 1-3, Uniform RulesCourts of Appeal (West 1993); LeBlanc v. LeBlanc, 600 So.2d 160, 162 (La.App. 3d Cir.1992). Plaintiff's arguments on appeal include prayers for attorney's fees and other relief. However, plaintiff filed no appeal of his own; therefore, our inquiry is limited to the contractual issues raised by defendants on appeal. As to these, a careful review of the trial transcript and pleadings furnishes no basis for upsetting the factual or legal findings of the trial court. Thus, we affirm in toto the conclusions of that much respected tribunal.
The trial judge who heard the evidence firsthand and had the opportunity to observe the demeanor of the witnesses found that Comeaux promised to have the horse registered. This finding was corroborated by Richard and his wife, Jenny Richard. While defendant maintains that he made no assertions that he would have the animal registered, the trial judge was persuaded that this recollection was flawed. We have reviewed the pleadings, evidence, and transcript, *510 and find no error in the trial court's factual findings.
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La. 1978); A. Tate, `Manifest Error' Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962)."
Rosell v. Esco, 549 So.2d 840, 844 (La.1989).
As the lower court states, the case sub judice is not unlike Fusilier v. Ardoin, 266 So.2d 531 (La.App. 3d Cir.1972). In both, trial courts granted exceptions of prescription based on redhibition, yet ultimately rescinded sales of horses by vendors who obligated themselves to confirm the horse's pedigree then failed to do so. For present purposes, it is of no moment that in Fusilier the agreement was in writing and here it is not, for such oral agreements are permitted provided they be proven by at least one credible witness and corroborative evidence. LSA-C.C. art. 1846.
"C.C. art. 1846 requires that an oral contract in excess of $500 must be proven by at least one witness and other corroborating evidence. A party may offer his own testimony in support of a claim of an oral contract in excess of $500 but must show other circumstances which corroborate his claim. Although corroboration is required, only general corroboration must be shown, not independent proof of every detail of his testimony. `The question of whether evidence offered by the plaintiff corroborates his claim under an oral contract is a finding to be made by the trier of fact, and is therefore not subject to reversal unless clearly wrong.' Lee Eyster & Associates, Inc. v. Favor, 504 So.2d 580, 582 (La.App. 4 Cir.1987), writ denied, 507 So.2d 232 (La.1987)."
Taylor v. Dowden, 563 So.2d 1294, 1297 (La. App. 3d Cir.), writs denied, 568 So.2d 1057 (La.1990). Both plaintiff and his wife attested to the contract's terms and this testimony was sufficient in light of all of the corroborative evidence.
"It is well settled that a party in the litigation may serve as his own `credible witness' in fulfilling the requirements of this article. Ville Platte Concrete v. Western Cas. & Sur., 399 So.2d 1320 (La.App. 3d Cir.1981); O'Rourke v. Tracy, 375 So.2d 747 (La.App. 4th Cir.1979). As to the requirement of `other corroborating circumstances,' only general corroboration is required. Independent proof of every detail of the agreement is not necessary. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977); Ville Platte Concrete v. Western Cas. & Sur., supra."
Pearce v. Rogers, 423 So.2d 83, 87 (La.App. 1st Cir.1982).
In addition to the testimony of Randy and Jenny Richard, the person who introduced plaintiff to defendant Comeaux corroborated plaintiff's account that the horse was intended for breeding purposes. The trial judge reviewed the evidence and determined that a contract was formed by the parties to this proceeding which included defendant Comeaux's furnishing registration, and we affirm that finding.
Comeaux's other legal arguments are also found wanting. The assertion that parol evidence cannot be admitted to vary the terms of a written agreement between its parties presumes that such an agreement in fact exists. LSA-C.C. art. 1848 provides as follows:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to *511 prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
See also 5 S. Litvinoff, La. Civil Law TreatiseThe Law of Obligations § 12.88, at 386-387 (West 1992).
No such writing exists here. The only written evidence pertaining to the sale consists of a simple receipt issued by Comeaux to the Richards. Since this document was not signed by both of the parties, it therefore constitutes neither an authentic act nor an act under private signature. LSA-C.C. art. 1833, 1837.
Nor can we say that the trial court erred in rescinding the sale. LSA-C.C. art. 2013 provides, in pertinent part, as follows:
When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved. In either case, the obligee may recover damages.

* * * * * *
Thus, the trial court rescinded the sale on grounds that Comeaux failed to perform timely. LSA-C.C. art. 1778. The same result would have obtained on other grounds, for example, failure of a suspensive condition, LSA-C.C. art. 1773, Smith v. A.K. Roy, Inc., 391 So.2d 1356 (La.App. 4th Cir.1980), and Guichard v. Greenup, 259 So.2d 93 (La.App. 4th Cir.1972), or cause,[1] LSA-C.C. art. 1950 and 5 S. Litvinoff, La. Civil Law Treatise The Law of Obligations § 17.71 at 609, n. 7 (West 1992), or possibly mistake of fact, to name a few.
Defendants finally contend that the trial court erred in assessing all costs against them in connection with the suit. The trial court is vested with great discretion to assess costs against any party as it may deem equitable, even against the party who prevails on the merits. Fanara v. Big Star of Many, Inc., 558 So.2d 316 (La.App. 3d Cir.1990). Although defendants' peremptory exception of prescription was granted in connection with the redhibitory vices found in the horse made a subject of these proceedings, plaintiff's petition was for breach of contract. Most of the efforts by the parties litigant and the courts have been exerted towards resolution of the terms of that agreement and the resulting damages arising from defendant-appellant David Comeaux's noncompliance with its terms. A trial court's assessment of costs can be disturbed only upon a showing of abuse of discretion, DB Orban Co. v. Lakco Pipe & Supply, Inc., 496 So.2d 1382, 1385 (La.App. 3d Cir.1986) and cites therein contained, and we find no such abuse here.
For the foregoing reasons, we affirm the judgment of the trial court. All costs of these proceedings are taxed to defendant-appellants.
AFFIRMED.
NOTES
[1] Richard testified that he bought the horse for his son so that his son could prove the value of the horse for racing and foaling purposes and to make money through his invested labors. Dr. Smith, a veterinarian, diagnosed the horse's parrot mouth problem as severe and degenerative, and opined that the problem would probably result in Late Night Bunny's being put to sleep within four (4) years. In addition, he noted that parrot mouth is a hereditary infliction. This would mean a reduced price for the filly for the few years remaining of her life, even if she were able to compete successfully despite her degenerating ability to feed herself.